1999 PA Super. 4

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Albert Sylvester PAYSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 19, 1998.
Filed Jan. 8, 1999.

Joseph P. Burt, Public Defender, Erie, for appellant.

Lisa M. Schlosser, Asst. Dist. Atty., Erie, for Commonwealth, appellee.

Before KELLY and EAKIN, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Albert Sylvester Payson appeals from the judgment of sentence entered following his *pro se*, non-negotiated guilty plea to burglary.[1] We are bound to agree with Payson that his waiver of counsel was constitutionally inadequate. We therefore vacate his judgment of sentence and remand for a new trial.

¶ 2 In April of 1997, Payson was observed breaking into a house on Peach Street in Erie by a resident of that neighborhood. This neighbor called the police, who found Payson hiding in the house, in possession of coins and a gold watch later identified by the occupant[2] as his. There was evidence of forced entry.

▆ ¶ 3 A little over one week later, the public defender was appointed to represent Payson. However, although there is neither a petition for nor a grant of withdrawal in the record before us, the public defender was not again actively involved in this case until after sentencing.[3]

---

1. Burglary of a non-occupied structure adapted for overnight accommodation, a first-degree felony as per 18 Pa.C.S. § 3502.

2. Although the house was not occupied by anyone other than Payson at the time he was found in it, it was not an abandoned structure. However, it is not clear to us whether the person living in it was a tenant or an owner. We therefore refer to him as the "occupant."

3. An application for a public defender was date-stamped and docketed May 8, 1997 on Payson's behalf in which he alleged, *inter alia*, that he was presently incarcerated and had no money or job. The notarized application, signed and sworn to by Payson on April 28, 1997, included the signed entry of appearance by A.J. Adams, Esquire, under the April 28, 1997 signature of Michael M. Palmisano, Public Defender. The application was signed and approved by the Honorable Shad Connelly on May 5, 1997, as follows:

> AND NOW, this 5 th day of May, 1997, upon written motion of the defendant, the Public Defender is hereby appointed as counsel for the defendant in the above entitled case and is permitted to proceed *in forma pauperis*.

There is no subsequent withdrawal of the public defender in the several dockets of record, the two trial court opinions, the official record itself in full, or the parties' briefs. Thus, the Public De-

¶ 4 Approximately one month after the public defender was appointed to represent him, Payson posted bond and was released on the condition that he remain in the county. One week later, in signed documents which are of record but which have not been docketed, Payson, acting *pro se* in front of Erie District Justice Samuel DiPaolo, waived his right to a preliminary hearing and to counsel for the limited purpose of "this hearing/trial."

¶ 5 Eight months later, Payson appeared *pro se* before the Honorable Shad Connelly for the entry of his plea. The Assistant District Attorney questioned him as follows:

MR. ZAK: Your Honor, this is the plea in the matter of the Commonwealth versus Albert Sylvester Payson at 1477 of 1997. Mr. Payson is present here. Mr. Payson, do you have an attorney?

THE DEFENDANT: No, I don't, sir.

MR. ZAK: And is it your desire to proceed without an attorney?

THE DEFENDANT: Yes, sir.

MR. ZAK: Is that because you can't afford one?

THE DEFENDANT: Exactly.

MR. ZAK: Okay. Have you applied through the Public Defender's office?

THE DEFENDANT: Yes, and I can't afford one through them. I work.

MR. ZAK: But nevertheless you just as soon get this over with today; is that correct?

THE DEFENDANT: Exactly.

MR. ZAK: All right. Mr. Payson, you're charged with the offense of burglary....

Immediately following this exchange, Assistant District Attorney Zak colloquied Payson on his entry of a non-negotiated guilty plea,

and Payson signed a supplemental form explaining and verifying that he understood his guilty plea rights. This explanation included the following relevant statements:

1. I understand the crime(s) I am charged with; I have received a copy of the information and I was notified of the crime(s) against me at my arraignment; my attorney has reviewed the charge(s) with me as well as the elements of each particular crime.

2. I understand that if I am pleading guilty/no contest without an attorney, I am waiving my right to an attorney. I know that I have a right to an attorney to represent me, including one to be appointed free of charge if I am unable to afford an attorney.

The form included no other information relevant to a waiver of counsel, and no separate form was used. This was the extent of Payson's waiver of counsel colloquy prior to entry of the plea. The court then accepted the plea, and sentencing was deferred for the preparation of a presentence report. Judge Connelly notified Payson that his case was assigned to a different judge for sentencing, gave him the date, and reminded him of his right to hire an attorney for sentencing, as well as a right to proceed *pro se.*

¶ 6 One month later, Payson appeared for sentencing as scheduled in the courtroom of the Honorable John A. Bozza. There, a different Assistant District Attorney commenced the proceeding by explaining Payson's post-sentencing and appellate rights. The following exchange then occurred:

MR. CAREY: At this time, do you have any questions regarding these rights?

MR. PAYSON: No, I don't.

MR. CAREY: One final thing. You have the right to have an attorney at all stages

---

fender was the attorney of record, at least until entry of present appellate counsel—who, as discussed below, we speculate may be from the Public Defender's office. It appears Payson was permitted to proceed *pro se* while the Public Defender was still the attorney of record, and that the Public Defender represented him immediately before and immediately after he proceeded *pro se*, with no withdrawal and re-appointment of counsel. This is improper. There is no right to hybrid representation. *Commonwealth v. Ellis*, 534 Pa. 176, 626 A.2d 1137 (1993).

Appellate counsel, Mr. Burt, makes no reference in his brief to the May, 1997 appointment of the Public Defender, nor does he acknowledge his own affiliation with the Public Defender. However, this court's docket reveals that the street address listed on Mr. Burt's brief is actually the Public Defender's office. We infer that Mr. Burt is affiliated with that office, although we are unable to state with certainty whether Mr. Burt is representing Payson in his capacity as a Public Defender.

of your criminal proceeding. That would include sentencing today. Do you understand that?

Mr. PAYSON: Yes.

MR. CAREY: Is it your desire to proceed today without the benefit of an attorney?

MR. PAYSON: I was working. I can't afford one. They said I couldn't have one because I was working.

MR. CAREY: The PD's office said you made too much money?

MR. PAYSON: Yeah.

MR. CAREY: And you haven't gone out and hired an attorney?

MR. PAYSON: I couldn't afford to and keep my house up and everything.

MR. CAREY: So it's your decision to go forward today without an attorney?

MR. PAYSON: Yeah, I have no choice.

\*　　\*　　\*　　\*　　\*　　\*

MR. CAREY: Good morning, Your Honor.[4]

THE COURT: Good morning.

MR. CAREY: Your Honor, this is the time set for the sentencing in the case of the Commonwealth versus Albert Payson at docket 1477 of 1997. Mr. Payson, were you in court just a minute ago when I went over the rights that you have following sentencing?

MR. PAYSON: Yes, I was.

MR. CAREY: Do you have any questions regarding those rights?

MR. PAYSON: No, I don't.

MR. CAREY: Sir, I also went over the fact that you have the right to have an attorney at all stages of your criminal case, including sentencing today, and you told me, did you not, that you applied for a PD and they told you you made too much money; is that correct?

MR. PAYSON: Yes.

MR. CAREY: And that you have not hired private counsel and it's your desire to proceed without the benefit of an attorney today; is that correct?

MR. PAYSON: That's correct.

Payson had again signed a supplemental form, this one explaining his post-sentence rights, but it contained nothing relevant to a waiver of counsel.[5] This was the extent of the colloquy regarding waiver of counsel before sentencing.

■ ¶ 7 Following this exchange, the defendant signed a form acknowledgment of post-sentencing rights and exercised his right of allocution. The court then considered a pre-sentence report which included Payson's lengthy criminal record, a victim impact statement, and a notation that he was on federal probation at the time of the present incident. The assistant district attorney asked for an aggravated range sentence. Judge Bozza then stated on the record:

THE COURT: Thank you, Mr. Carey. Mr. Payson, you've been a criminal most of your life. We really don't meet too many of you anymore. Most of you have already been sentenced to jail for life, so we don't see a lot of you. But you're here, unfortunately, and you decided to come to Erie. Why was that?

MR. PAYSON: I'm on federal probation here.

THE COURT: Oh, I see. You've lived a life of crime. I counted conservatively twenty-eight prior offenses for which the guidelines in this case are completely inadequate.

The court then explained the Pennsylvania Sentencing Guidelines to Payson. Stating that since Payson's prior record score was five, and "five is as high as it goes," the court concluded that "the guidelines really are not applicable in your case." Judge Bozza then

---

**4.** It appears the asterisks, included in the sentencing proceeding transcript as excerpted *verbatim*, indicate an interruption during which Judge Bozza entered the courtroom. From the greeting and explanation, we infer he had not previously been present.

**5.** This form did not review the limited grounds for an appeal (the validity of the plea, the legality of the sentence, or the jurisdiction of the court) following entry of a plea. Neither the Assistant District Attorney nor Judge Bozza reviewed these grounds on the record with Payson, either before or after sentencing. The form and the Assistant District Attorney explained the deadlines associated with post-sentence motions and appeals.

entered a sentence which was a departure above the guidelines, from a minimum of eighty-four months (i.e., seven years) to a maximum of 240 months (i.e., twenty years) of incarceration, plus restitution, fines, and court costs.[6] The defendant immediately contested the validity of the pre-sentence report, which is not of record, indicating that he had committed twenty-eight prior offenses. The Commission on Sentencing Guidelines Sentence Form, which is of record, reflects fifteen prior offenses, not twenty-eight. It states that defendant's prior record score is based upon one prior third-degree felony, one prior weapons misdemeanor, and thirteen prior non-weapons misdemeanors. No prior adult or juvenile burglaries are noted on the form. Additionally, the form includes no reasons for departure from the guidelines.

¶ 8 A notice of appeal was then filed by present counsel.[7] Upon timely notice of appeal, Judge Bozza effectively gave Payson's newly hired counsel one day to file his concise statement of matters complained of on appeal.[8]

¶ 9 In this direct appeal, Payson claims three serious errors. First, he asserts that he did not validly waive his constitutionally guaranteed right to counsel. Second, he questions the validity of the guilty plea colloquy by which he ostensibly waived his constitutionally guaranteed right to a trial by a jury of his peers. Third, he claims the sentence imposed by the court is both an abuse of discretion and illegal in that it is manifestly excessive and lacks adequate record justification for guidelines departure.[9]

¶ 10 We need only examine the right to counsel claim, for if Payson is correct, he would be entitled to a new trial. Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Commonwealth v. Szuchon*, 506 Pa. 228, 484 A.2d 1365 (1984). Deprivation of

---

6. Although the judge had no duty to explain the guidelines to the defendant, it should be noted that the defendant's prior record score of five is not "as high as it goes." Under the applicable Fourth Edition of the guidelines, five is lower than the prior record scores of repeat felon or "RFEL" and repeat violent offender category or "REVOC." When considered together with the offense gravity score of eight, this score yielded a standard guideline range of 30–42 months, a mitigated range of 24–30, and an aggravated range of 42–48 months. The sentence imposed, 84–240 months, is a departure above the aggravated range. 42 Pa.C.S. § 9721; 204 Pa.Code Ch. 303; Pa.C.Sent. Fourth (August 12, 1994). The sentence imposed is legal, as it is well within the statutory maximum of ten to twenty years for a first-degree felony such as the burglary here at issue. 18 Pa.C.S. §§ 1103–1105; 42 Pa.C.S. §§ 9755(b), 9756(b). However, without making a finding on the issue, we note that it is an abuse of sentencing discretion to depart from the guidelines solely for a reason which is already incorporated in the guidelines, such as prior record. *Commonwealth v. Stevens*, 349 Pa.Super. 310, 503 A.2d 14 (Pa.Super.1986). There are, however, many other valid reasons for departure in the instant case.

7. It is unclear to us whether Payson at this point hired present counsel independently, or whether counsel is acting in his capacity as a previously appointed Public Defender. *See* note 2, *supra*.

8. Exactly thirty days after entry of the sentence, present counsel filed a notice of appeal on defendant's behalf. Six days later, the court ordered him to file a concise statement of matters complained of on appeal within two weeks. On that deadline, counsel responded with both a petition for an extension and a preliminary statement of matters, pleading that the notes of testimony which he needed had not yet been filed. A few days later, the court denied the extension request without reason, demanding that Payson file the concise statement by May 13, 1998. The plea transcript was filed on May 6, 1998, and the sentencing transcript on May 12. We glean from this that the court afforded counsel one day for review of the sentencing notes.

9. Because we remand for a new trial due to the first of his claims, we do not reach Payson's other two issues. However, the Commonwealth objects that Payson has waived his claims that his plea is invalid and that his sentence excessive because he failed to file *pro se* post-sentence motions. We cannot even consider the possible merits of this objection until we determine whether Payson was properly proceeding *pro se* at the time. *See Commonwealth v. Monica*, 528 Pa. 266, 597 A.2d 600 (1991) (waiver doctrine inapplicable to *pro se* defendant, if defendant's waiver of counsel improper).

these rights can never be harmless. *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984).

¶ 11 An individual may certainly waive a constitutional right. However, a waiver is only valid if made with knowledge and intelligence. *Commonwealth v. Carey*, 235 Pa.Super. 366, 340 A.2d 509 (Pa.Super.1975). If we are to uphold such a waiver, the record must clearly demonstrate an informed relinquishment of a known right. *Commonwealth v. Hill*, 492 Pa. 100, 422 A.2d 491 (1980). In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it. *Commonwealth v. Starr*, 541 Pa. 564, 581, 664 A.2d 1326, 1335 (1995); *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978); *Commonwealth v. Johnson*, 319 Pa.Super. 463, 466 A.2d 636 (Pa.Super.1983). Furthermore,

the presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed where the record is silent. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer. **Anything less is not waiver.** Thus, this Court is constitutionally bound to place the burden of proving waiver on the Commonwealth.

*Commonwealth v. Monica*, 528 Pa. 266, 273, 597 A.2d 600, 603 (1991) (citations omitted) (emphasis added).

¶ 12 We have clear guidance on what the courts and the legislature consider adequate evidence that a rejection of counsel was intelligent and understanding. We begin with the United States Supreme Court. In a 1948 case which subsequently has been quoted widely, *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), the Court contributed the following guidance:

To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which a plea is tendered.

*Id.*, 332 U.S. at 723–24, 68 S.Ct. 316.

¶ 13 Pennsylvania Rule of Criminal Procedure 318, "Waiver of Counsel," states:

(c) Proceedings before a Judge. When the defendant seeks to waive the right to counsel after the preliminary hearing, **the judge** shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel.

Pa.R.Crim.P. 318(c), 42 Pa.C.S. (emphasis added). The comment to the rule suggests that, at a minimum, such a colloquy should include the following questions aimed at ensuring:

(1) That the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent.

(2) That the defendant understands the nature of the charges against him and the elements of each of those charges.

(3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.

(4) That the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules.

(5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.

(6) That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

Comment to Pa.R.Crim.P. 318, 42 Pa.C.S. These provisions were last amended effective in 1985.[10] Several cases decided in the ensuing thirteen years have a direct bearing on the case at hand, for they have interpreted the Rule more strictly than the Comment and have rendered its approach insufficient. The law is now clear that the trial judge must conduct the colloquy and in doing so must formally question the defendant on the six listed areas.

¶ 14 In *Monica, supra,* our supreme court reviewed the requirements for a waiver of counsel:

[T]he procedure to be followed when a defendant seeks to waive his right to counsel is provided in Pa.R.Crim.P. 318(c).... Therefore, **a trial judge** must thoroughly inquire on the record into an accused's appreciation of the right to effective assistance of counsel and to represent oneself at trial, at guilty plea hearings, at sentencing, and at every critical stage of a criminal proceeding.

\*　　\*　　\*

It is the Commonwealth's position that Appellant knowingly and voluntarily waived his right to counsel and elected to proceed *pro se.* The Commonwealth alleges Appellant applied to the public defender's office for legal representation and was found ineligible for assistance due to his financial status. Appellant then chose not to hire private counsel but instead appeared *pro se....*

Examination of the record discloses that **the trial judge** failed to conduct an on-the-record colloquy to determine whether Appellant knowingly, intelligently and voluntarily waived his constitutional right to counsel. The record also establishes that during the exchanges between the trial court and Appellant which took place at trial, Appellant stated that the public defender's office and county bar association had advised him that they did not have the time or energy to spend on silly cases like his. In addition, Appellant told the trial

court that he did not have money to pay a lawyer.

\*　　\*　　\*

Based on this record, we conclude that **the trial court** committed reversible error by allowing Appellant to proceed with trial under his own representation **without first conducting** a thorough on-the-record colloquy to determine whether Appellant knowingly and understandingly made a decision to represent himself and also to determine the validity of his waiver of the constitutional right to representation by counsel.

*Monica* at 273–75, 597 A.2d at 603–604 (emphasis added). *Starr, supra,* continued this trend by requiring that "the **court** must inquire" into the six areas listed in the comment. *Id.,* 541 Pa. at 580–81, 664 A.2d at 1334–35 (emphasis added).

¶ 15 In *Commonwealth v. Brazil,* 549 Pa. 321, 701 A.2d 216 (1997), our supreme court, citing its earlier decision in *Monica,* held that where no waiver of counsel colloquy was conducted by the trial judge, any alleged waiver is ineffective, even if standby counsel was appointed. The court reiterated that "when a defendant seeks to waive the right to counsel, **the trial court** is required to conduct, on the record, a **full and complete** waiver colloquy to determine whether the defendant's waiver is knowing, voluntary, and intelligent." *Id.* at 326, 701 A.2d at 219 (emphasis added).

¶ 16 Several cases of this court are also instructive. In *Commonwealth v. Ford,* 715 A.2d 1141 (Pa.Super.1998), finding no waiver of the right to counsel, we vacated a defendant's sentence and remanded for a new trial, noting:

Before waiver is found, however, the "trial court is required to make a **searching and formal on-the-record inquiry**...." "The question of waiver must be determined **regardless of whether the accused can or cannot afford to engage counsel.**" [*Commonwealth v.*] *Grant,* [229 Pa.Super.

---

**10.** The comment notes that although it is best if the judge conducts the colloquy, there is nothing to prevent the Assistant District Attorney from conducting it. It also advises that standby counsel be appointed for a defendant, and it warns trial courts to check the cases, for the law is in flux regarding this critical constitutional right.

419,] 323 A.2d [354][,] 357 [ (Pa.Super.1974) (citing *Gideon v. Wainwright*, 372 U.S. 355 [335] [83 S.Ct. 792, 9 L.Ed.2d 799] (1963) )].

*Ford*, 715 A.2d at 1144 (citations omitted) (emphasis added).

¶ 17 In *Commonwealth v. Smith*, 426 Pa.Super. 144, 626 A.2d 614 (Pa.Super.1993), we prefaced our recitation of the six enumerated inquires from Rule 318's comment with the following mandate: "[T]he court **must** conduct an examination of the defendant to elicit, **at a minimum,** the following information on the record." *Id.* 626 A.2d at 617 (emphasis added).

¶ 18 Finally, we find *Commonwealth v. Carothers*, 450 Pa.Super. 208, 675 A.2d 734 (Pa.Super.1996), particularly elucidating, as it is remarkably similar to the case at hand and involved one of the two judges who presided over Payson's case. In contrast with the present case, where no such motion is of record, the Erie Public Defender **had** therein filed of record a motion to withdraw as counsel due to the fact that defendant's earnings rendered him ineligible for such representation. Judge Shad Connelly granted withdrawal, again in contrast to the present case. He then granted two continuances in order to allow defendant to secure counsel. However, defendant proceeded *pro se* and was found guilty of burglary and related crimes before another judge. Carothers claimed on appeal that his waiver of counsel had been ineffective. We noted therein the factual similarity to a line of cases involving defendants who had elected to proceed *pro se* after being found ineligible for representation by the Public Defender and/or being unable to pay counsel fees.[11]

¶ 19 Although we had previously held that a defendant who appears *pro se* with no reasonable excuse for the lack of an attorney

effectively waives the right to counsel, in *Carothers* we clarified that this does not in any way diminish a trial court's duties under Rule 318. We stated that where, as here, a defendant asserts his inability to afford counsel despite being ineligible for free representation through the public defender, such an assertion constitutes a reasonable excuse. Therefore, as a reasonable excuse, defendant's assertion of his inability to afford counsel is completely irrelevant to whether the requirements for an effective waiver of counsel have been met. Additionally, we elaborated:

> Were we to end our inquiry at this point, we would enable defendants to guarantee themselves a basis for a new trial merely by asserting an inability to afford counsel, or other "reasonable excuse," and proceeding *pro se* at their first trial. To obviate such manipulation by ensuring a knowing, voluntary and intelligent waiver of counsel, **the trial court must comply with the dictates of Rule 318.**

*Carothers*, 675 A.2d at 738 (citation omitted) (emphasis added). Those dictates, we reiterated, require the trial court formally and searchingly to inquire into the six areas covered by the Comment to Rule 318. *Id.*, 675 A.2d at 737.

¶ 20 Bearing in mind these legal requirements, we turn to the facts to analyze whether the standards for a waiver of counsel as articulated above were met herein. In the present appeal, we are assisted in this analysis by not one, but two, trial court opinions, one by each of the judges involved.[12] This is appropriate, as we have two waiver of counsel colloquies to analyze, one from the actual entry of the plea, and one from the sentencing. We need, however, only concern ourselves with the first of these, for if it is inadequate, Payson would be entitled to a new trial.[13]

**11.** Such cases include *Monica, supra; Smith, supra; Commonwealth v. Little*, 418 Pa.Super. 558, 614 A.2d 1146 (Pa.Super.1992); *Commonwealth v. Brown*, 327 Pa.Super. 505, 476 A.2d 381 (Pa.Super.1984); and *Commonwealth v. Wentz*, 280 Pa.Super. 427, 421 A.2d 796 (Pa.Super.1980).

**12.** Both are attached for purposes of allowance of appeal.

**13.** Judge Connelly's opinion begins with an examination of the requirements for a proper guilty plea colloquy as listed in the Comment to Rule 319, in a similar fashion to Rule 318 and its comment. Although Judge Connelly included this analysis primarily because Payson also challenges the validity of his guilty plea, we find it applicable in part to the analysis of whether Payson effectively waived his right to counsel. In this case, the guilty plea colloquy was con-

¶ 21 As to the first of the six requirements for an effective waiver of counsel, the court states that Payson indicated his understanding that he had the right to be represented and the right to appointment of counsel if indigent. We find this to be true, for Payson signed the written guilty plea statement explaining these rights prior to entry of his plea.[14]

¶ 22 As to the second and third requirements, the court states that the guilty plea colloquy conducted by the Assistant District Attorney demonstrated that Payson was aware of the nature of the charges against him, the elements of each of these charges, and the permissible range of sentences and/or fines. We agree. The Assistant District Attorney went over these requirements with Payson as part of his guilty plea colloquy. Thus, Payson was indeed informed of the second and third of the recommended counsel waiver colloquy elements as per the Comment to Rule 318. The signed, written guilty plea rights form reiterated these.

¶ 23 The trial court admits, however, that Payson was not colloquied on the fourth, fifth, and sixth required areas of inquiry for a valid counsel waiver. However, the Commonwealth contends, and the court agrees, that this does not invalidate the waiver colloquy. We disagree.

¶ 24 The Commonwealth and the court take the position that the three questions not posed to Payson deal with trial rights which are not applicable here, since this is a guilty plea. This argument has some appeal. However, on further study, we find it incorrect.

¶ 25 In order for waiver of counsel to be valid and effective, case law requires the same formal inquiry at guilty pleas as at trials. *Commonwealth v. Baker*, 318 Pa.Super. 19, 464 A.2d 496 (Pa.Super.1983). This makes sense, because where, as here, a defendant is considering waiving not only the right to counsel but also the right to a jury trial by entering a guilty plea, a full understanding of what knowledge is being waived along with counsel is no less important than when the defendant wishes to represent himself at trial. This is because the three colloquy areas omitted here may be critical in a defendant's decision whether or not to enter a guilty plea.

¶ 26 While the colloquy is occurring in a case such as this, a defendant may still change his mind, perhaps based upon new information gained through the colloquy itself, and he may still opt to be represented or to be tried by a jury of his peers. In other words, his decision is not yet final.

¶ 27 Thus, it is not only important that the *pro se* defendant be aware **at the moment** he enters a guilty plea and waives his right to counsel that an attorney is familiar with rules of procedure, possible defenses, and other rights that may be unknown to and lost by a *pro se* defendant; it is also critical that the defendant have an awareness of these critical points **prior to** the entry of that plea or acceptance of his counsel waiver—i.e., during the colloquy. We cannot find the court's omission of these critical inquiries harmless, especially where, as here, both waivers occur simultaneously. Whether defendant's decisions regarding his counsel waiver and his guilty plea entry are knowing and intelligent depend in part upon his knowledge of the three omitted areas. This is especially true where, as here, there is no standby counsel.

¶ 28 Prior to entering his guilty plea, Payson had not waived his right to a jury trial. Since this is so, the omission of the three elements of the waiver of counsel colloquy cannot be excused on the ground that these elements pertain only to jury trials. Since Payson had not yet waived his right to a jury trial, his knowledge of counsel's skills relating to jury trials was central to his decision whether or not to waive the right to counsel. It is perhaps in part for this reason that the

ducted immediately after the waiver of counsel colloquy, and some of the requirements for each are the same. It is a common practice for the two waivers to be conducted together.

14. We do not agree, however, with Judge Connelly's statement that he advised Payson orally of this first colloquy element. Judge Connelly's advice followed acceptance of the guilty plea and thus could not have been part of a waiver colloquy.

cases require the court's inquiry to be "searching and formal." *Ford, supra.*

¶ 29 The trial court, indeed, acknowledges *Brazil, supra, Carothers, supra,* and *Baker, supra,* but distinguishes them, stating that the elements of the waiver colloquy were not adhered to at all in those cases, while here, some of them were observed.[15] Although this may be true, these cases did not hinge on the number of the six required inquiries that had been omitted. Instead, they firmly upheld the right to counsel and stressed the importance of adhering to all the requirements of a thorough colloquy. The case law does not support the view that only some of the requirements must be met.

■ ¶ 30 The Commonwealth points to the written waiver of counsel form that Payson signed for purposes of waiving his right to a preliminary hearing at a district justice's office approximately seven months before the entry of his guilty plea, stating that this should indicate Payson's awareness of these rights. This form includes all of the listed colloquy elements as per Rule 318's comment. However, it also includes a specific notation that it is effective **only as to the proceeding before the district justice.** This form was neither utilized nor referred to at the proceeding in common pleas court.

■ ¶ 31 We acknowledge that, as the Commonwealth argues, common sense may appear to dictate that even though the preliminary hearing waiver of counsel form was not applicable to the waiver of counsel at hand, it is relevant to show that Payson at one time had an awareness of his counsel rights. However, this argument is not borne out by the case law. The Commonwealth, in analyzing both the waiver of counsel colloquy and the guilty plea colloquy, applies a totality of the circumstances analysis to both. This is incorrect under our law at this time. Although the validity of a guilty plea colloquy is to be viewed under the totality of the circumstances, we may not apply a totality analysis

to a waiver of counsel colloquy. *Brazil, supra* ; *Baker, supra.*

¶ 32 Finally, in a related vein, the Commonwealth argues that the waiver was valid in part because Payson is not a stranger to the criminal justice system. In the words of the trial court, "it would be absurd to conclude that this sophisticated, experienced career criminal did not enter a voluntary and knowing plea, did not understand and waive his right to counsel, or in any other way was not aware of his rights or the full consequences of his actions."

¶ 33 We find this argument most persuasive, under the totality of the circumstances. Although we are bound not to accept it, we empathize with the trial judge's plight, and we consider his point well taken. We also find it difficult to believe that Payson is now acting in good faith when he asserts that he did not waive his right to counsel. He only raised the issue after he was sentenced to a greater term than he likely expected.

■ ¶ 34 Again, instead of looking to the totality of the circumstances, under which these observations would be relevant, the law in this area considers only compliance with the mandated procedures. The case law insists that an effective waiver of counsel must include a colloquy that contains an inquiry into the six areas listed above, conducted on the record by the judge. "[A]ny shortcoming relative to this colloquy cannot be gauged to the quality of an accused's self-representation nor justified on the basis of his prior experience with the system." *Commonwealth v. Lloyd,* 370 Pa.Super. 65, 535 A.2d 1152, 1163 (Pa.Super.1988) (*citing Commonwealth v. Celijewski,* 324 Pa.Super. 185, 471 A.2d 525 (Pa.Super.1984); *Commonwealth v. Palmer,* 315 Pa.Super. 601, 462 A.2d 755 (Pa.Super.1983)) (emphasis added). *See Commonwealth v. Dale,* 286 Pa.Super. 308, 428 A.2d 1006 (Pa.Super.1981) (appellant's prior experiences as a criminal defendant are irrelevant to the question of whether a "penetrating and comprehensive" counsel waiver

---

**15.** The court also concludes that compliance with the six questions suggested by Rule 318's comment is not mandatory, reasoning that since the comment to Rule 319 indicates that that rule's list of questions is mandatory, and since

the comment to Rule 318 does not so indicate, the list in Rule 318 is not mandatory. This logic ignores both subsequent case law as discussed *supra,* and the warning within the comment itself that the case law is in flux.

colloquy was conducted). *See also Commonwealth v. Davis*, 393 Pa.Super. 88, 573 A.2d 1101, 1106 (Pa.Super.1990) (that appellant has been advised of his right to counsel on appeal cannot be inferred from his having prior criminal record).

¶ 35 Judge Connelly's position on this issue is the same as that of Justices Castille and Newman, the dissenting minority, in last year's Pennsylvania Supreme Court decision in *Brazil, supra.* Therein, the minority argued, in our eyes persuasively, that the majority's "bright-line" rule for waiver colloquies is inappropriate, and that instead, waivers of counsel ought to be analyzed under a totality of the circumstances. Although we find the position of the minority and of Judge Connelly correct, we are bound by the position of the majority in *Brazil*. Unfortunately, the record herein does not indicate the colloquy given to Payson is on the legal side of the line.

¶ 36 We note, in conclusion, that this case presents an example of how critically important it is that a trial court follow standard procedures. Several simple changes in routine operations would greatly improve the trial court's odds of being upheld on appeals such as this. These changes might include: insisting upon proper appearances and withdrawals of counsel on the record; meticulously adhering to waiver of counsel, waiver of jury trial, and guilty plea oral colloquy checklists and supplemental signed, written waiver forms; ensuring that no proceedings go on record without a judge being present in the courtroom at the time; making certain the court is thoroughly apprised of proper and improper reasons for deviation from sentencing guidelines at the time of sentencing, and insisting that these reasons are stated both on the record and on the Sentencing Guidelines forms; and allowing all appellants a uniform and adequate period of time to review the notes of testimony, once they have been transcribed and distributed, prior to demanding a concise statement of matters complained of on appeal. Adherence to such procedures would not only ensure compliance with statutory and case-law requirements interpreting constitutional rights; it would also have the added benefits of preserving respect for the judiciary and serving as a guarantee to the court that its own sentences are adhered to as intended.

¶ 37 Judgment of sentence is vacated. The case is remanded for a new trial. Jurisdiction relinquished.

¶ 38 KELLY, J., concurs in the result.

