**COMMONWEALTH of Pennsylvania,**
**Appellee,**

**v.**

**Frank McDONOUGH, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 14, 2000.

Filed Nov. 29, 2000.

Candace Cain, Asst. Public Defender, Pittsburgh, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before: HUDOCK, STEVENS and BROSKY, JJ.

HUDOCK, J.:

¶ 1 This is an appeal from the judgment of sentence of life imprisonment imposed after a jury convicted Appellant of murder of the first degree.[1] For the reasons that follow, we affirm.

¶ 2 The trial court summarized the evidence in the case as follows:

[O]n April 3, 1992, Robert Terry Gayles was shot to death while he sat inside of a stolen car that ultimately crashed into [Appellant's] house. Several witnesses placed [Appellant] at the scene, and a former girlfriend, Michelle LeDonne, ultimately testified that [Appellant] admitted to her that he had killed the victim, in response to the victim having broken into a truck owned by [Appellant] and his brother.

Trial Court Opinion, 10/28/99, at 1–2.

¶ 3 Appellant raises the following issues on appeal:

I. WAS [APPELLANT'S] PURPORTED WAIVER OF COUNSEL KNOWING, INTELLIGENT OR VOLUNTARY WHERE THE COLLOQUY WAS INADEQUATE AND FAILED TO ASCERTAIN HIS UNDERSTANDING OF THE NATURE OF THE CHARGES AND WHERE HE WAS NEVER INFORMED THAT HE WOULD BE GIVING UP LEGAL EXPERTISE NEEDED TO FILE A MERITORIOUS MOTION TO DISMISS HOMICIDE CHARGES FOR VIOLATION OF SPEEDY TRIAL RULE 1100?

II. DID THE TRIAL COURT VIOLATE [APPELLANT'S] RIGHT TO DUE PROCESS AND CONFRONTATION WHEN IT ALLOWED THE PROSECUTION TO VIDEOTAPE THE COMMONWEALTH'S MAIN WITNESS PRIOR TO HER TESTIFYING AT TRIAL IN VIOLATION OF RULE 9015 OF THE PENNSYLVANIA RULES OF CRIMINAL PROCEDURE CONCERNING UNAVAILABLE WITNESSES?

Appellant's Brief at 4. We will address these issues in the order presented.

¶ 4 Our Supreme Court has summarized the law concerning a criminal defendant's waiver of counsel as follows:

Before a defendant is permitted to proceed *pro se*, . . . the defendant must first demonstrate that he knowingly, voluntarily and intelligently waives his constitutional right to the assistance of counsel. If the trial court finds after a probing colloquy that the defendant's putative waiver was not knowingly, voluntarily or intelligently given, it may deny the defendant's right to proceed *pro se*. The "probing colloquy" standard requires Pennsylvania trial courts to make a searching and formal inquiry into the questions of (1) whether the defendant is aware of his right to counsel or not and (2) whether the defendant is aware of the consequences of waiving that right or not. Specifically, the court must inquire whether or not: (1) the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent; (2) the defendant understands the nature of the charges against him and the elements of each of those charges; (3) the defendant is aware of the permissible range of sentences and/or fines for the offenses charged; (4) the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules; (5) defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these

1. 18 Pa.C.S.A. § 2502(a).

defenses are not raised at trial, they may be lost permanently; and (6) the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, the objection to these errors may be lost permanently. Comment to Pa. R.Crim.P. 318.

*Commonwealth v. Starr*, 541 Pa. 564, 581–82, 664 A.2d 1326, 1335 (1995) (citations omitted). Pennsylvania Rule of Criminal Procedure 318(c) states the colloquy requirement as follows: "When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel." The comment to Rule 318 elaborates on this requirement in several ways. First, it lists the six mandatory areas of inquiry noted above. It also states:

> Although it is advisable that the judge ... should conduct the examination of the defendant, the rule does not prevent the attorney for the Commonwealth or an already-appointed or retained defense counsel from conducting all or part of the examination of the defendant as permitted by the judge. . . .

Pa.R.Crim.P. 318, cmt.

¶ 5 At a pre-trial conference on May 13, 1998, Appellant presented a petition to waive counsel and represent himself. There followed an informal discussion among the trial court, Appellant, Appellant's appointed counsel, Robert Foreman, Esquire, and counsel for the Commonwealth, Daniel Fitzsimmons, Esquire. In that discussion, the trial court explored Appellant's reasons for wanting to represent himself and, with the assistance of counsel, explained to Appellant the role of standby counsel. After this informal discussion, the following formal colloquy was conducted in the presence of the trial court:

> MR. FITZSIMMONS: Sir, do you understand that you have the right to be represented by counsel, and if you cannot afford to hire your own counsel that the Court would appoint counsel for you at no charge to you?
>
> [APPELLANT]: Yes.
>
> MR. FITZSIMMONS: Do you understand in this case you are charged with a single count, that being of criminal homicide, and it is alleged that you intentionally, knowingly, recklessly or negligently caused the death of Robert Terry Gales,[2] an[o]ther human being, on or about April 3rd, 1992. Do you understand that's the nature of the charge in this case?
>
> [APPELLANT]: I understand that.
>
> MR. FITZSIMMONS: Criminal homicide encompasses five degrees, first-degree murder[,] potentially second-degree murder[,] third-degree murder, voluntary manslaughter and involuntary manslaughter. Do you understand it encompasses several degrees of homicide[?]
>
> [APPELLANT]: I understand.
>
> MR. FITZSIMMONS: Do you understand [that] for you to be convicted of first-degree murder the prosecution would have to show that you killed Mr. Gales, and that you did so with the specific intent to kill and with malice?
>
> [APPELLANT]: I understand that.
>
> MR. FITZSIMMONS: To be convicted of second-degree murder the prosecution would have to show that you killed Mr. Gales in the perpetration of a violent felony, and that you did so with malice. Do you understand that, sir?
>
> [APPELLANT]: I understand.

**2.** The last name of the victim is spelled "Gales" at some points in the record and "Gayles" at others, and we are unable to determine which is the correct spelling.

*  When quoting from the record, we have adopted the spelling used in the portion of the record being quoted at the time.

THE COURT: To be convicted of third-degree murder the prosecution would have to show that you killed Mr. Gales and that you did so with malice. Do you understand that, sir?

[APPELLANT]: I understand.

MR. FITZSIMMONS: To be convicted of voluntary manslaughter the state would have to show that you intentionally killed Mr. Gales, and that you did so under circumstances reducing the killing from murder to manslaughter, such as if you killed in the heat of passion or if you killed as a result of serious provocation by the victim, or if you killed believing that you had the right to defend yourself when you really didn't have proper justification. Do you understand that?

[APPELLANT]: I understand that.

MR. FITZSIMMONS: And in order for you to be convicted of involuntary manslaughter the prosecution would have to show that you recklessly or with gross negligence caused the death of Mr. Gales. Do you understand that?

[APPELLANT]: I understand.

MR. FITZSIMMONS: If you were convicted of first-degree murder, sir, the penalty would be life in prison without parole; do you understand that?

[APPELLANT]: I understand.

MR. FITZSIMMONS: And though it's perhaps academic, that could run consecutive to any sentence that you're now serving; do you understand?

[APPELLANT]: I understand.

MR. FITZSIMMONS: If you were convicted of second-degree murder the penalty for that is a mandatory life sentence without parole. Do you understand that, sir?

[APPELLANT]: Yes.

MR. FITZSIMMONS: That as well could run consecutive to the sentence you're now serving; do you understand that?

[APPELLANT]: Yes.

MR. FITZSIMMONS: If you're convicted of third-degree murder, sir, this happening before the penalty was changed, you would be subject to a maximum penalty of ten to twenty years. That is a minimum sentence of ten years and a maximum sentence of twenty years. Do you understand that, sir?

[APPELLANT]: Yes.

MR. FITZSIMMONS: That could run consecutive to the sentence you're now serving. Do you understand that as well?

[APPELLANT]: I understand.

MR. FITZSIMMONS: If you were convicted of voluntary manslaughter you could be sentenced to a maximum sentence of five to ten years, that is a minimum sentence of five years and a maximum sentence of ten years, and that could run consecutive to the sentence you're now serving; do you understand that?

[APPELLANT]: Yes, I do.

MR. FITZSIMMONS: Finally, if you are convicted of involuntary manslaughter you be [sic] could be sentenced to a term of not less than two-and-a-half nor more than five years, that is a minimum sentence of two[-]and-a-half years is the least you could get, and a maximum sentence of five years is the most you could get, and that could run consecutive to the sentence you're now serving. Do you understand that, sir?

[APPELLANT]: Yes, I understand.

MR. FITZSIMMONS: There also could be substantial fines involved as well. Do you understand that?

[APPELLANT]: I understand.

MR. FITZSIMMONS: Do you understand, sir, that if you waive your right to counsel you'll be bound by all of the normal rules of procedure and of evidence, and that your counsel, whether Mr. Foreman or some other attorney, may be more familiar with those rules and those procedures than you would be? Do you understand that?

[APPELLANT]: I understand.

MR. FITZSIMMONS: Do you understand, sir, that there may be defenses that you would have to these charges which Mr. Foreman or another attorney might be aware of that perhaps you would not be aware of, and that if these defenses are not raised at trial that you may lose the right to present those defenses forever and ever?

[APPELLANT]: I understand.

MR. FITZSIMMONS: Do you understand, sir, that in addition to these defenses that I just mentioned you may have other rights that if you do not bring them up in a timely manner, that is there are certain rules that say when you have to bring up certain claims, that if you don't bring them up in a timely manner that they may be permanently lost; do you understand that?

[APPELLANT]: I understand.

MR. FITZSIMMONS: Do you understand, finally, that there may be, if you were to represent yourself, errors during the trial, errors of law perhaps, or other errors which if they [are] not objected to at the time that they happen or in a timely manner that you may, because of your failure to act at that time, you may be said to have waived or given up the right to complain of those errors forever and ever?

[APPELLANT]: I understand.

MR. FITZSIMMONS: Sir, have you had any drugs or alcohol in the last couple of days that might affect your thinking here?

[APPELLANT]: No.

MR. FITZSIMMONS: Have you ever suffered any mental or physical infirmities that might affect your thinking here today?

[APPELLANT]: No.

MR. FITZSIMMONS: How old are you?

[APPELLANT]: Thirty-seven.

MR. FITZSIMMONS: What's the extent of your education?

[APPELLANT]: High school.

MR. FITZSIMMONS: Do you read, write and understand the English language?

[APPELLANT]: Yes.

MR. FITZSIMMONS: Do you understand everything that I have said?

[APPELLANT]: Yes, I do.

MR. FITZSIMMONS: And you say that you have reviewed this rule [Rule 318] yourself and are familiar with its terms even before you came here today?

[APPELLANT]: Yes.

MR. FITZSIMMONS: I have no other questions to be included in the colloquy.

THE COURT: All right, very well. Thank you.

It's apparent that [Appellant] understands his Sixth Amendment right to counsel and his right under the Constitution of Pennsylvania to counsel, and that he is making a knowing, voluntary and intelligent waiver of that right.

I accept your waiver and appoint Mr. Foreman to be your stand-by counsel.

N.T., 5/13/98, at 20–28. Having reviewed this record, we conclude that it fully supports the trial court's finding that Appellant made a knowing, voluntary and intelligent waiver of counsel. None of Appellant's arguments to the contrary convince us otherwise.

■ ¶ 6 First, Appellant argues that the colloquy was insufficiently detailed. Specifically, he contends that the colloquy lacked "an explanation of the different *mens rea* required for each type of homicide and the possible defenses to each type." Appellant's Brief at 27. He also contends that the trial court should have informed him that soon after the pre-trial conference he would have a meritorious claim for dismissal under Pa.R.Crim.P. 1100. He concludes:

This colloquy is an oral version of a "mere routine inquiry" with "standard questions" that was criticized in written form in *Von Mol[t]ke v. Gillies*, 332 U.S.

708, 724 [68 S.Ct. 316, 92 L.Ed. 309] (1948) (plurality opinion). In short, there was no attempt to determine whether [Appellant] knew "all other facts essential to a broad understanding of the whole matter." *Henderson v. Frank*, 155 F.3d 159, 166 ( [3d Cir.] 1998).

Appellant's Brief at 29. We disagree. This Court has repeatedly approved of colloquies similar to the one in this case. *See Commonwealth v. Thier*, 354 Pa.Super. 7, 510 A.2d 1251 (1986); *Commonwealth v. Dooley*, 332 Pa.Super. 227, 481 A.2d 336 (1984); *Commonwealth v. Andrews*, 282 Pa.Super. 115, 422 A.2d 855 (1980).

¶ 7 Our research has revealed no cases requiring the specificity Appellant seeks, and the cases cited by Appellant, *Von Moltke*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309, *Henderson*, 155 F.3d 159, and *Commonwealth v. Payson*, 723 A.2d 695 (Pa.Super.1999), do not require such specificity. In *Von Moltke*, the petitioner was charged in a fourteen-page indictment with conspiring with twenty-three other individuals to violate the Espionage Act of 1917. The indictment enumerated forty-seven overt acts allegedly performed in pursuance of the conspiracy. She eventually signed a written waiver of counsel and pleaded guilty in a proceeding described in the opinion announcing the judgment of the Court as follows:

> The whole matter appears to have been disposed of by routine questioning within five minutes during an interlude in another trial. If any explanation of the implications of the indictment or of the consequences of her plea was then mentioned by the judge, or by anyone in his presence, the record does not show it. Nor is there anything to indicate she was informed that a sentence of death could be imposed under the charges. The judge appears not to have asked petitioner whether she was able to hire a lawyer, why she did not want one, or who had given her advice in connection with her plea. Apparently he was not informed that the petitioner's only legal counsel had come from FBI agents.

*Von Moltke*, 332 U.S. at 717–18, 68 S.Ct. 316. The dissent quoted the trial court's opinion describing the proceedings thus:

> The plea was taken before Judge Arthur Lederle of this District. The evidence showed that the Judge inquired of her if she understood the charges made in the indictment. She answered in the affirmative. The Judge inquired if she desired the assistance of counsel. She answered in the negative. The Judge then inquired what was her plea. She answered guilty. In addition to this she submitted a signed waiver stating that she did not desire counsel.

*Id.* at 738–39, 68 S.Ct. 316. The plurality characterized this colloquy as a "mere routine inquiry" that "may leave a judge entirely unaware of the facts essential to an informed decision that án accused has executed a valid waiver of his right to counsel." *Id.* at 724, 68 S.Ct. 316. That the colloquy in *Von Moltke*, which did not include an explanation of the charges against the petitioner and the permissible range of sentences, could be so characterized sheds no light on the adequacy of the much more extensive colloquy conducted in the instant case.

¶ 8 Similarly, *Henderson* does not support Appellant's claim that the colloquy in this case was inadequate. In *Henderson*, there was no colloquy at all. The defendant signed a pre-printed waiver of counsel form at his preliminary hearing. The form included the following statements:

> I, *John Henderson*, have been informed that I have the right to have a lawyer represent me, and if I cannot afford one, one will be afforded to me without cost. . . .

> I, *John Henderson*, am a ware [sic] of the permissible range of sentences and/or fines for the offenses charged. . . .

I knowingly, voluntarily and intelligently waive these rights and choose to act as my own lawyer at this hearing/trial.

*Henderson,* 155 F.3d at 162–63 (omissions in original). The defendant later filed a petition with the court of common pleas requesting that he be allowed to proceed *pro se.* The petition stated almost exclusively, "I wish to proceed on my own behalf." *Id.* at 166. The court held, "A generic waiver form such as Henderson's cannot replace the verbal colloquy between judge and defendant, set forth for the record, to satisfy the judge's obligation to ensure a waiver is made voluntarily, knowingly and intelligently." *Id.* at 167. In the instant case, there was an on-the-record colloquy tailored to Appellant's case. Accordingly, *Henderson* is inapposite.

¶ 9 *Payson* is also inapposite. In *Payson,* an assistant district attorney questioned the defendant in the presence of the trial court. The colloquy covered the first three of the six areas of inquiry listed in the comment to Rule 318. However, the last three were not covered at all. This Court held that the lack of inquiry into the last three areas invalidated the waiver colloquy. Thus, *Payson* can shed no light on the adequacy of the colloquy in this case, which colloquy included inquiries into all of the areas required by Rule 318.

¶ 10 Appellant's principal claim is that the colloquy was invalid because the attorney for the Commonwealth conducted the colloquy instead of the court. We disagree. Although two panels of this court have recently stated that the trial court must conduct the colloquy, those statements are *dicta* and, therefore, are not binding on us. *Mackey v. Adamski,* 286 Pa.Super. 456, 429 A.2d 28, 32 n. 13 (1981). The panel in *Payson* stated that the trial judge must conduct the waiver colloquy, but, as we noted above, it found the waiver colloquy invalid, not because the assistant district attorney conducted the colloquy, but because three of the six required areas of inquiry were omitted from the colloquy. The panel in *Common-*

*wealth v. Owens,* 750 A.2d 872 (Pa.Super.2000), relying on *Payson* and *Commonwealth v. Brazil,* 549 Pa. 321, 701 A.2d 216 (1997), stated that the trial court must conduct the colloquy. However, the panel concluded that *Brazil* and *Payson* changed the law in this area, and it declined to apply them retroactively because the appellant had failed to properly preserve the issue. The panel then found the colloquy invalid because the appellant was not informed of the permissible range of sentences for the crimes charged. Thus, while both panels stated that Pennsylvania law requires the trial court to conduct the colloquy, neither panel held that the colloquy under review was invalid because someone other than the trial court had conducted it. Any statements in those cases suggesting that the court must conduct the colloquy by asking the questions are unnecessary to the decision and are, therefore, *dicta,* and not controlling. *Mackey, supra.*

¶ 11 Nor do we find any of the cases cited in *Payson* to be controlling on the question of whether the trial court must conduct the colloquy. In concluding that the trial court must conduct the colloquy, the panel in *Payson* relied on *Commonwealth v. Monica,* 528 Pa. 266, 597 A.2d 600 (1991), *Starr,* 541 Pa. 564, 664 A.2d 1326, *Brazil,* 549 Pa. 321, 701 A.2d 216, *Commonwealth v. Ford,* 715 A.2d 1141 (Pa.Super.1998), *Commonwealth v. Smith,* 426 Pa.Super. 144, 626 A.2d 614 (1993), and *Commonwealth v. Carothers,* 450 Pa.Super. 208, 675 A.2d 734 (1996). Although these opinions phrase the colloquy requirement in terms of what the trial court must do, *Monica,* 528 Pa. at 274, 597 A.2d at 603 ("a trial judge must thoroughly inquire...."), *Starr,* 541 Pa. at 582, 664 A.2d at 1335 ("the court must inquire...."), *Brazil,* 549 Pa. at 326, 701 A.2d at 219 ("the trial court is required to conduct...."), *Ford,* 715 A.2d at 1143–44 ("the trial court is required to make...."), *Smith,* 626 A.2d at 617 ("the court must conduct ..."), *Carothers,* 675 A.2d at 737

("the trial court is required to make . . . ."), the question of who among the judge, counsel for the defendant and counsel for the Commonwealth may conduct the colloquy was not at issue in these cases.[3] Thus, we conclude that these opinions are not controlling on this issue.

¶ 12 Just as we conclude that the case law does not require the trial court to conduct the colloquy, we also conclude that Rule 318 does not impose such a requirement. The rule requires the trial judge to "ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel." Pa. R.Crim.P. 318(c). The trial judge need not personally question the defendant in order to ascertain the quality of the defendant's waiver. Where, as here, counsel for the Commonwealth conducts a colloquy in the presence of the judge, the judge is able to listen to the defendant's responses and observe the defendant's demeanor. Through this process, the judge can readily ascertain whether the waiver is knowing, voluntary and intelligent. The comment to the rule recognizes this fact and allows for questioning by counsel. We find further support for our conclusion in the fact that our Supreme Court has held that questioning by counsel is permissible under the similarly worded Rule 319(A)(3), which requires colloquies before the acceptance of pleas of guilty or *nolo contendere*. *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974). To hold otherwise would, to borrow the words of Justice Castille, "elevate[ ] form over substance and raise[ ] technicality to a high art form." *Commonwealth v. Williams*, 539 Pa. 61, 84, 650 A.2d 420, 432 (1994) (Castille, J., concurring and dissenting).

¶ 13 Having determined that Appellant validly waived his right to counsel, we turn to his second issue, which is that the trial court erred when, over Appel-

lant's objection, it allowed the Commonwealth to videotape the testimony of Michelle LeDonne prior to trial pursuant to Pa.R.Crim.P. 9015. The court allowed the Commonwealth to do so because Ms. LeDonne had indicated that she would not testify at trial. She ultimately testified at trial and the videotape was not played for the jury. Appellant contends that this procedure prejudiced him by giving Ms. LeDonne an opportunity to rehearse her testimony and by giving her an opportunity to preview Appellant's manner and method of cross-examination. We disagree. The deposition offered Ms. LeDonne no more of an opportunity to rehearse her testimony than a preliminary hearing or a coroner's hearing would have. It did, however, offer Appellant an opportunity to preview her testimony, an opportunity he otherwise would not have had, as no preliminary hearing or coroner's hearing was held in this case. Moreover, Appellant offers only a single example of how the deposition may have influenced Ms. LeDonne's testimony. He claims that at trial she gave a more polished answer to the question of when Appellant admitted to her that he shot the victim. In the deposition, she responded, "It was between-it was probably early '94. No. Yeah, probably early '94. Maybe in the wintertime." N.T., 10/8–9/98, at 38. At trial she responded, "I think it was early in '94 in the wintertime. It was like towards the beginning of the year in '94." N.T., 10/13–20/98, at 316–17. We can discern no meaningful difference between these responses. Accordingly, we conclude that Appellant is not entitled to a new trial on this basis.[4]

¶ 14 Judgment of sentence affirmed.

---

3. In *Monica, Brazil, Ford, Smith and Carothers*, there were no colloquies at all. In *Starr*, the Supreme Court reviewed a colloquy conducted jointly by the trial court, counsel for the defense and counsel for the Common-

wealth and found it adequate. The question of whether the participation of counsel invalidated the colloquy was not raised.

4. Appellant also asserts that he is entitled to a new trial because Ms. LeDonne used the de-

position to bolster her testimony when she said, "That is also what I said Thursday under oath." N.T., 10/13–20/98, at 335. We will not review this claim, as Appellant waived it by failing to seek relief from the trial court when Ms. LeDonne made the statement. Pa. R.A.P. 302(a).