J-S39035-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM CRAIG CARNELL | : | |
| | : | No. 1210 MDA 2012 |
| Appellant | : | |

Appeal from the Judgment of Sentence February 7, 2013
In the Court of Common Pleas of Fulton County
Criminal Division No(s).: CP-29-CR-0000065-2011

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:              **FILED SEPTEMBER 21, 2016**

The Pennsylvania Supreme Court has vacated this Court's prior order and remanded this matter for reconsideration in light of ***Commonwealth v. Carrasquillo***, 115 A.3d 1284 (Pa. 2015). ***See Commonwealth v. Carnell***, 1210 MDA 2012 (Pa. Super. Jan. 15, 2014) (unpublished memorandum), *vacated and remanded*, 123 A.3d 1063 (Pa. 2015). Following remand, Appellant asserts that the trial court abused its discretion by finding his assertion of innocence did not establish a fair and just reason to withdraw his no-contest plea before sentencing. We are constrained to affirm.

A twenty-page affidavit of probable cause set forth the charges against Appellant and his wife, Melissa Ann Carnell ("Co-defendant"). In November

---

[*] Former Justice specially assigned to the Superior Court.

or December 2005, Appellant and Co-defendant became involved in the financial affairs of Appellant's mother, Margaret Carnell ("Peggy"). Aff. of Probable Cause, 3/29/11, at 12. In 2006, they obtained powers of attorney for Peggy and Appellant's brother, John, who is deaf and speech impaired and requires the use of a wheelchair. *Id.* at 1, 12. Appellant and Co-defendant moved Peggy and John from Peggy's homestead to a doublewide trailer on two-acres of land, both of which they purchased using Peggy's funds. *Id.* at 1-2.

According to the Commonwealth, Appellant and Co-defendant "proceeded to misappropriate Peggy's and John's assets so that by January 2008 Peggy was left with virtually no assets in banks, a $120,000.00 mortgage on a home that she no longer occupied, and more than $43,000.00 in credit card debt." *Id.* at 12. Appellant and Co-defendant used Peggy's assets for their personal benefit, including alleged purchases of a backhoe, a boat, trailers for the backhoe and boat, a dump truck, and land. *Id.* at 5-6, 13, 20. Appellant's relatives also questioned his and Co-defendant's ability to take a vacation to Raystown Lake. *Id.* at 6.

Co-defendant also obtained funds from the United Cerebral Palsy Association for the installation of a wheelchair ramp and handicap bathtub for John's use. *Id.* at 9. Although Co-defendant ordered a bathtub and certified that it was satisfactory, the tub was not paid for or installed. *Id.* at 8-9. Co-defendant, using her power of attorney, and even after

relinquishing her power of attorney, endorsed and deposited John's social security disability checks into her and Appellant's account. *Id.* at 17-18.

In January 2008, Peggy's daughter, Tena Booth, visited Peggy and discovered her on the couch and John crying. *Id.* at 6. Tena called 911. *Id.* Appellant arrived at the scene, told Tena that Peggy did not need medical care, and later told the paramedics that he did not want them to take her to the hospital. *Id.* Peggy was taken to the hospital where she was diagnosed with a stroke. *Id.* at 3. John was also in poor physical condition, and the toilet he was using was broken. *Id.* at 4, 7. In February and March of 2009, Tena discovered that Appellant and Co-defendant had mortgaged Peggy's former home and were behind on taxes for that property since 2007. *Id.* at 6. The Office of the Attorney General began an investigation, which included a forensic audit and interviews of Appellant's relatives and other witnesses, including bank employees.

On March 29, 2011, a criminal complaint was filed against Appellant and Co-defendant. Appellant was charged with two felony counts of theft by unlawful taking and one count of conspiracy.[1] Appellant and Co-defendant retained private counsel, Casey G. Shore, Esq., and waived their preliminary hearings. The Commonwealth filed an information reciting the charges and

---

[1] The thefts were graded as felonies of the third degree. Co-defendant was charged with an additional count of theft by failure to make required disposition.

alleging that the criminal activities occurred "on or about late 2005 to early 2008." Information, 4/18/11, at 1.

On July 12, 2011, Appellant and Co-defendant appeared before the Honorable Carol L. Van Horn and orally requested a continuance to obtain counsel. Appellant asserted, "We just ain't had the money to get an attorney." N.T., 7/12/11, at 2. Co-defendant explained that they could not afford to continue to retain Attorney Shore and told the court, "We'd like to hire a local attorney and have representation in order to come to a plea agreement . . . ." *Id.* at 3.

The Commonwealth did not oppose Appellant's and Co-defendant's July 12, 2011 requests for a continuance. *Id.* at 5. The Commonwealth represented that Appellant and Co-defendant "indicated at least that they want to resolve this without trial." *Id.* at 4. Additionally, the Commonwealth suggested Attorney Shore thought "it would be better if they not retain him so they could put that money towards restitution in this case." *Id.* at 4. The trial court granted the continuance, but warned that Appellant and Co-defendant or their counsel should be prepared to proceed at the October trial term. *Id.* at 5.

Appellant and Co-defendant failed to appear at a scheduled hearing on October 11, 2011, and the trial court issued bench warrants. On October 18, 2011, Appellant and Co-defendant appeared for a hearing before the

J-S39035-13

Honorable Richard J. Walsh.[2] At the beginning of the hearing, the prosecutor averred that he met with Appellant and Co-defendant and they executed waiver-of-counsel forms in his presence.[3] The prosecutor also

---

[2] The trial court and the Commonwealth accepted Appellant's and Co-defendant's explanation that they missed the October 11, 2011 hearing due to an error in their calendar.

[3] The written waiver of counsel form was included in the record and read:

> 1. I understand that I have the right to be represented by an attorney, and the right to have a free attorney appointed if I am indigent.
>
> 2. I understand the nature of the charges against me and the elements of each of those charges.
>
> 3. I am aware of the permissible range of sentences and/or fines for the offenses charged.
>
> 4. I understand that if I waive my right to an attorney, I will still be bound by all the normal rules of procedure and that an attorney would be familiar with those rules.
>
> 5. I understand that there are possible defenses to these charges that an attorney might be aware of, and if these defenses are not raised at trial they may be lost permanently.
>
> 6. I understand that in addition to defenses I have many rights that, if not timely asserted may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by me, these errors may be lost permanently.
>
> The Judge has explained all of these things to me, or they have been explained to me in the presence of the Judge. It is my desire to give up my rights to have an attorney

- 5 -

represented that Appellant and Co-defendant intended to enter *nolo contendere* pleas to the charges against them. The prosecutor passed the waiver-of-counsel and plea colloquy forms to the court, and the following exchange ensued:

> The court: Okay, addressing [Appellant] and [Co-defendant], the Court is looking at documents entitled waiver of counsel pursuant to Pennsylvania Rule of Criminal Procedure 121, and I want to show it to both of you. It looks to me like we have got signatures from each of you at the bottom of these pages, is that correct [to Appellant]?
>
> [Appellant]: Yes.
>
> The court: [addressing Co-defendant]
>
> [Co-defendant]: Yes.
>
> The court: Did you have a chance to read through the documents?
>
> [Co-defendant]: Yes, we did.
>
> [Appellant]: Yes, Your Honor.
>
> The court: They explain your right to counsel and proceedings of this nature and I have been told by [the prosecutor] you are here today for the purpose of entering no contest pleas. Do you have any questions for the Court about your right to counsel in these proceedings or about anything you that read on these waivers?
>
> [Appellant]: No.

---

> represent me in this case and to proceed with this case without an attorney.

Waiver of Counsel Pursuant to Pa.R.Crim.P. 121, 10/18/11.

[Co-defendant]: No, Your Honor.

The court: Don't want you to be bashful. I need you to understand certain things. This is obviously a very important proceeding in your lives, and in a proceeding like this, having read this, you know that you have a right to a lawyer. You know that that means you can engage a lawyer on your own if you would you like to do that, and you know that if you assert to the Court that you can't afford a lawyer and if the Court is convinced that you can't afford a lawyer, and you want a lawyer, you would then have the right to court appointed counsel. Do you understand those things?

[Co-defendant]: Yes, Your Honor.

[Appellant]: Yes, Your Honor.

The court: Are both of you prepared to proceed today with entering pleas without the benefit of counsel representing you?

[Co-defendant]: Yes.

[Appellant]: Yes, Your Honor.

The court: All right. The Court's satisfied.

*Id.* at 4-5. The prosecutor thereafter conducted the plea colloquies with Co-defendant and then Appellant.[4] The court accepted the pleas and deferred sentencing for the preparation of presentence investigation reports.

At the sentencing hearing convened on November 29, 2011, the following exchange occurred:

---

[4] During the plea colloquy with Appellant, the prosecutor noted that Appellant indicated that he understood and could write English, but had some difficulty reading. N.T., 10/18/11, at 18.

The court: I want to do this individually. Speaking first with [Appellant].

* * *

[The court]. Do you understand you are here today for the purpose of having sentence imposed?

[Appellant]. Yes, Your Honor.

[The court]. Do you understand that at a proceeding in which you are here to be sentenced, you have the right to be represented by a lawyer?

[Appellant]. Yes.

[The court]. Do you understand you have that right?

[Appellant]. Yes.

[The court]. Do you also understand that if you would like a lawyer to represent you and can convince the Court that you cannot afford a lawyer, the Court will appoint a lawyer to represent you without any cost to you; do you understand that?

[Appellant]. Yes.

[The court]. Have you made any effort to obtain counsel to represent you here today?

[Appellant]. No, Your Honor.

[The court]. Do you have any questions for me about your right to counsel on these proceedings?

[Appellant]. No, Your Honor.

[The court]. No questions. Are you prepared to proceed today without the benefit of the Court assigning counsel or would you like the Court to assign counsel?

[Appellant]. We would like to get counsel.

[The court]. What was that; you'd like to have counsel?

[Appellant]. Yes.

[The court]. Are you able to afford counsel?

[Appellant]. No.

[The court]. Tell me a little bit more about that. What's your source of income?

[Appellant]. I guess about $2,500.00 a month.

[The court]. You have to speak up.

[Appellant]. $2,500.00 a month.[5]

[The court]. All right. This is pretty serious stuff, do you all know that?

[Appellant]. I know that.

[The court]. Is there some particular reason why before coming in here today you didn't try to make some effort to get counsel or—I mean, when I asked you said you didn't even try and I'm wondering, it's not like someone told you it's too expensive if you didn't even try?

[Appellant]. Yes. I really didn't have the money.

[The court]. All right.

The court: [Co-defendant], let me speak with you. . . .

\* \* \*

_____

[5] In the affidavit of probable cause, it was noted that in 2006, Appellant received $28,729.02 in payroll payments, and obtained a worker's compensation payment of $9,347 for a 2002 claim. Aff. of Probable Cause at 15. Peggy also sold Appellant and Co-defendant thirty acres of land in 2003.

[The court]. Have you made any effort to obtain a lawyer at your own expense?

[Co-defendant]. Yes, Your Honor. I did make inquiries to different law offices and received quotes for an amount.

[The court]. Received quotes for today?

[Co-defendant]. Yes. And, that was $2,500.00 which we don't have.

[The court]. How many offices did you call?

[Co-defendant]. Four or five.

[The court]. Do you remember who they were?

[Co-defendant]. I can get them for you. I have them all written down.

[The court]. Do you remember any of them?

[Co-defendant]. There was one, Abums. It was a funny name, in Chambersburg.

[The court]. Abom and Kutulakis?

[Co-defendant]. Yes.

[The court]. Anybody else?

[Co-defendant]. Not that—I can't remember their names.

[The court]. All right. Do you have any questions for me about your right to counsel?

[Co-defendant]. We feel that we need representation for this. . . .

N.T., 11/29/11, at 2-5.

The Commonwealth asserted that it "fel[t] it's been a little bit jerked around by the defendant[s]." *Id.* at 8. The prosecutor noted that Appellant and Co-defendant "appeared to be comfortable with their decision not to have an attorney" when they entered their pleas on October 18, 2011. *Id.* at 7. He also represented that he met Co-defendant "about two or three weeks ago" regarding restitution and "there was no mention of the desire to retain counsel." *Id.* at 7-8. He noted, "I'm not sure whether it be the recommendation of the presentence report or whether that's motivating [Appellant and Co-defendant] at this point." *Id.* at 8.

The trial court asked Appellant whether he was surprised by the recommendations of the probation department. *Id.* at 9. Appellant replied, "Yes[.]" *Id.* The court concluded:

> If nothing else, the Court believes, on the basis of their pleas, that we don't have any good reason to believe anything that they say based on the charges and based upon their pleas. On the other hand, the Court is looking down the pike and what we'll be facing if there's a request for counsel and we go through a sentencing proceeding, in which they are facing, at least one of them, very, very substantial time without the appointment of counsel. And, I'm not so sure that I want to go through a sentencing proceeding in which they don't have someone advocating on their behalf.
>
> Number 1, given that the sentence urged are [sic] serious and also given that the recommendations, especially in the case of [Co-defendant] with respect to counts 1 and 4, and with [Appellant] with respect to counts 1 and 3, the recommendations are at the highest end of the standard range. You know, we've got a standard range that runs from to 9 to 16 months and we've got recommendations for 16 months. It would seem

- 11 -

that if they had advocates, advocates might strongly consider to the Court that we ought to consider something other than the high end of the standard range.

The Court is also in the unfortunate circumstance, when I have two defendants standing in front of me saying that they want counsel to be able to proceed with their case. I think the Court's in an awkward position that we can't proceed without giving them counsel.

\* \* \*

. . . I just want to make sure that there is no light—I want to make sure that there's no situation in which [Appellant and Co-defendant] could make the case if they stood before the Court indicating before we sent them up state, which is the way it looks now, based on the recommendations. But, before we did that, that they asked for counsel and the Court to appoint counsel. Given that it may ultimately fall on the tax payers of Fulton County, as much as it has already, the Court is still inclined to appoint counsel. Whether they can afford it or not at this point, and we don't have time to get into proceedings about how much money they all make.

*Id.* at 10-12.

The trial court entered an order appointing present counsel to represent Appellant. The court, however, indicated that it had "the distinct impression that [Appellant and Co-defendant have] waffled on their intention to hire counsel or their desire to have counsel." Order, 11/29/11. The court rescheduled sentencing for December 22, 2011, and directed Appellant to reimburse the county if it was determined he was able to afford counsel. *Id.*

The trial court, upon Appellant's request, continued the sentencing hearing to February 7, 2012. On January 24, 2012, Appellant filed a counseled motion to withdraw his plea. Appellant asserted he had a tenth

grade education, did not manage his own finances, and "lacked the sophistication necessary to understand the complex financial allegations used in support of the charges against him." Appellant Mot. to Withdraw *Nolo Contendere* Plea Prior to Sentence, 1/24/12, at 2 (unpaginated). He also averred that he did not receive discovery before entering his plea and following counsel's review of the evidence, he wished to contest the charges and proceed to trial. *Id.* at 2-3. Appellant asserted that the withdrawal of his plea would not prejudice the Commonwealth. *Id.* at 3. Appellant did not assert actual innocence in his written motion.

The Commonwealth filed an answer on February 2, 2012, asserting (1) Appellant's plea was knowing, voluntary, and intelligent, (2) the recommendation for prison sentences was the only reason he requested counsel, and (3) the Commonwealth would suffer prejudice based on the delay resulting from the difficulties in scheduling trial. Commonwealth's Answer to Appellant's Mot. to Withdraw, 2/2/12, at 1-3. The Commonwealth noted Appellant did not assert his innocence. *Id.* at 2.

On February 7, 2012, the trial court convened a hearing on Appellant's motion to withdraw his plea.[6] Appellant stated that he knew more about his case than when he entered his plea. N.T. Mot. to Withdraw Plea &

---

[6] Immediately before convening the hearing on Appellant's motion to withdraw his plea, the trial court sentenced Co-defendant to nine to forty-eight months' imprisonment followed by two consecutive eighty-four month probationary terms. There is no indication that Co-defendant sought to withdraw her plea.

- 13 -

Sentencing, 2/7/12, at 8. When asked by the court what additional knowledge he acquired, he replied, "I'm just—I'm innocent." *Id.* When asked on direct examination if he was claiming his "actual innocence to the charges[,]" Appellant responded, "Yes." *Id.* at 9.

The Commonwealth responded that Appellant showed no hesitation when waiving his right to counsel and entering his pleas, but "there was a sudden hesitation" after seeing the sentencing recommendation of the Probation Department. *Id.* at 6. The Commonwealth cross-examined Appellant as follows:

> [Commonwealth]: In taking the position that you are taking today, sir, are you in any way, shape or form influenced by what the recommendation was of the Probation Department? They are recommending you go to prison, you understand that?
>
> [Appellant]: Right.
>
> [Commonwealth]: Is that influencing your position today?
>
> [Appellant]: Yes I guess.

*Id.* at 11. The prosecutor concluded, "I believe this is totally [a] reaction to what the recommendation was of the Probation Department and simply stated, your Honor, the Commonwealth does feel it's [sic] been prejudiced." *Id.*

The Commonwealth further argued that but for Appellant's vacillations, it "would have tried [him] in July of 2011 or August[, and] the case would have been much stronger because both defendants would have been at the

defense table." *Id.* at 7. The Commonwealth noted, "Another year, memories fade . . . ." *Id.*

The trial court found that Appellant's assertion of innocence was insincere because (1) Appellant was afforded the opportunity to obtain counsel, (2) the court conducted a waiver-of-counsel and plea colloquy before Appellant entered his plea; (3) Appellant did not hesitate when entering his plea; (4) Appellant made no efforts to secure counsel before the first scheduled sentencing hearing; and (5) Appellant was dissatisfied with the Probation Department's sentencing recommendation. *Id.* at 11-15; *see also* Order, 6/5/12, at 3-4. The court thus concluded that Appellant's assertion of innocence was "a manipulation" of the judicial system, which did not establish fair and just reason to withdraw his plea. The court entered an order denying Appellant's motion to withdraw his plea and immediately proceeded to sentencing, ordering him to serve nine to forty-eight months' imprisonment and a concurrent eighty-four months' probation. The court set a RRRI[7] minimum sentence of six months and twenty-two days. The court also ordered that Appellant be jointly and severally responsible for $180,000 in restitution.

On February 16, 2012, Appellant filed a timely post-sentence motion challenging the denial of his presentence motion to withdraw his plea. The

---

[7] *See* 61 Pa.C.S. §§ 4501-4512 (relating to recidivism risk reduction incentive).

trial court denied Appellant's post-sentence motion by an order docketed on June 5, 2012.

Appellant filed a timely appeal and complied with the trial court's order to submit a Pa.R.A.P. 1925(b) statement. The court filed a responsive Pa.R.A.P. 1925(a) opinion further explaining its decision to find Appellant's assertion of innocence insincere.

> First, at the hearing on the motion to withdraw, Appellant admitted on the record that the Probation Department's sentence recommendation influenced his decision to withdraw his plea. Second, the history of this case is one of delay and obfuscation. Third, the record belies Appellant's claim that he knew more about the case after he pleaded *nolo contendere*. As the Attorney for the Commonwealth stated on the record, Appellant and [Co-defendant] had no hesitation pleading no contest at the time they entered the pleas. Rather, it was only after he saw the sentencing recommendations that Appellant [wavered]. We similarly found Appellant's claim that he was a mere country rube—and did not understand the charges against him—unavailing. Under the totality of the circumstances, the Court determined that Appellant's assertion of innocence was not credible.
>
> *     *     *
>
> . . . Appellant attempts to dispute the evidence against him with other evidence that is not properly before the Court. It is not proper for us to weigh evidence of guilt or innocence in determining a motion to withdraw a plea. Rather, we believe that we were restricted to the evidence regarding the validity of the plea itself—not the whole case. We similarly will not address Appellant's alleged illiteracy—a claim that overstates the record.

Trial Ct. Op., 7/27/12, at 6-7 (record citations and footnote omitted).

This Court, in our previous memorandum, concluded Appellant's assertion of innocence constituted a fair and just reason to withdraw his plea. **Carnell**, 1210 MDA 2012 at 15. We vacated the judgment of sentence and remanded the case for the trial court to determine whether prejudice would result from the withdrawal of Appellant's plea. **Id.** at 17.

The Pennsylvania Supreme Court subsequently decided **Carrasquillo** and clarified the standards governing a presentence withdrawal of a plea. The **Carrasquillo** Court reaffirmed the precept that

> there is no absolute right to withdraw a guilty plea; trial courts have discretion in determining whether a withdrawal request will be granted; such discretion is to be administered liberally in favor of the accused; and any demonstration by a defendant of a fair-and-just reason will suffice to support a grant, unless withdrawal would work substantial prejudice to the Commonwealth.

**Carrasquillo**, 115 A.3d at 1291-92 (citation and footnote omitted).

The **Carrasquillo** Court specifically rejected the perception of a *per se* or bright-line rule that that "a bare assertion of innocence is not, in and of itself, a sufficient reason to require a court to grant such a request." **Id.** at 1285. The Court reasoned,

> [W]e are persuaded by the approach of other jurisdictions which require that a defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea. More broadly, the proper inquiry on consideration of such a withdrawal motion is whether the accused has made some colorable demonstration, under the circumstances, such that permitting withdrawal of the plea would promote fairness and justice. The policy of liberality remains extant

- 17 -

but has its limits, consistent with the affordance of a degree of discretion to the common pleas courts.

*Id.* at 1292.

The **Carrasquillo** Court found that the facts before it "illustrate[d] why the existing *per se* approach to innocence claims [wa]s unsatisfactory." *Id.* First, the defendant's assertion "was first made in sentencing allocution, after the close of the evidentiary record." *Id.* Second, the defendant did not "request to reopen the record for an orderly presentation in support of" his claims. *Id.* at 1293. Third, "the bizarre statements made by [the defendant] in association with his declaration of innocence undermined its plausibility, particularly in light of the Commonwealth's strong evidentiary proffer at the plea hearing."[8] *Id.* Thus, the Court found no basis to disturb

---

[8] The **Carrasquillo** Court summarized the defendant's request to withdraw his plea as follows:

> [The defendant] explained in allocution that he had pled guilty to spare [the minor victim] suffering, and he therefore expressed surprise at his portrayal during the sentencing hearing. [The defendant] also stated that he had entered his plea because, absent a polygraph examination, his account would not have been believed and he would not have received a fair trial. He continued to discuss scenarios unrelated to the sexual assault of [the victim], in which the CIA purportedly had victimized him by seeking to employ him as an assassin abroad, and where a serpent assertedly appeared and "[t]he Antichrist, he came out of me[.]" Claiming that he did not commit the assault . . . and had been framed, [the defendant] insisted that a polygraph test would prove his innocence and asked to withdraw his guilty plea.

the trial court's discretion to refuse the attempted withdrawal of the plea. ***Id.***

On October 14, 2015, the Pennsylvania Supreme Court vacated our prior decision and remanded for further consideration in light of ***Carrasquillo***. ***Carnell***, 123 A.3d at 1063. This Court requested supplemental briefs.[9]

Appellant, in his brief following remand, presents the following questions for review.

> Did the trial court err when it denied Appellant's pre-sentence motion to withdraw nolo contendere plea when [Appellant] asserted actual innocence and the Commonwealth failed to demonstrate substantial prejudice would result if the motion was granted?
>
> Was there an abuse of discretion when the trial court denied Appellant's post-sentence motion despite evidence supporting Appellant's claim of actual innocence?
>
> Did the trial court err by denying Appellant's right to effective assistance of counsel as guaranteed by the Constitutions of the United States and Pennsylvania?

Appellant's Supp. Brief at 8.

Appellant, in his first two arguments, reiterates that the trial court erred in rejecting his assertion of innocence, ***id.*** at 16-22, and with the appointment of counsel before sentencing, he was able to discover possible

---

***Carrasquillo***, 115 A.3d at 1286 (record citations omitted).

[9] This Court granted the Commonwealth's two motions for extension of time to file its appellee's brief. We deny the Commonwealth's third motion for extension of time to file its brief.

weaknesses in the Commonwealth's case against him. *Id.* at 22-23. He thus suggests that *Carrasquillo* is distinguishable because in that case, "the defendant's statements . . . in association with his declaration of innocence undermine[d] its plausibility, particularly, in light of the Commonwealth's strong evidentiary proffer at the plea hearing." *Id.* at 12. In his third argument, he contends that the trial court improperly prevented his counsel from providing effective assistance. *Id.* at 30. Appellant, however, does not challenge the trial court's acceptance of his waiver of counsel immediately before pleading *nolo contendere* and appears to concede that his waiver of counsel was voluntary. *Id.* at 32. We now affirm.

"A trial court's decision regarding whether to permit a guilty plea to be withdrawn should not be upset absent an abuse of discretion. An abuse of discretion exists when a defendant shows any 'fair and just' reason for withdrawing his plea absent 'substantial prejudice' to the Commonwealth." *Commonwealth v. Pardo*, 35 A.3d 1222, 1227 (Pa. Super. 2011) (citations omitted). As noted above, *Carrasquillo* clarified that "a bare assertion of innocence is not, in and of itself, a sufficient reason to require a court to grant such a request." *Carrasquillo*, 115 A.3d at 1285. The "defendant's innocence claim must be at least plausible to demonstrate, in and of itself, a fair and just reason for presentence withdrawal of a plea." *Id.* at 1292. Moreover, several factors may support a trial court's refusal to permit withdrawal, including the timing of the request, the orderly presentation of

evidence in support of the request, and the quality of the claim of innocence. *See id.* at 1292-93.

It is axiomatic that an appellate court must defer to the credibility determinations of the finder of fact. *See In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (discussing challenges to dependency proceedings); *Commonwealth v. Myers*, 722 A.2d 649, 651-52 (Pa. 1998) (discussing challenge to application of former mandatory minimum sentence provision and collecting cases); *Commonwealth v. Brown*, 648 A.2d 1177, 1190-91 (Pa. 1994) (discussing challenges to the weight of the evidence).

> [Q]uestions of credibility and conflicts in the evidence presented are for the trial court to resolve, not our appellate courts. . . . As long as sufficient evidence exists in the record which is adequate to support the finding found by the trial court, as factfinder, we are precluded from overturning that finding and must affirm, thereby paying the proper deference due to the factfinder who heard the witnesses testify and was in the sole position to observe the demeanor of the witnesses and assess their credibility.

*Myers*, 722 A.2d at 651-52 (citation omitted).

> [A]ppellate courts . . . are not in a position to make the close calls based on fact-specific determinations. Not only are our trial judges observing the parties during the hearing, but usually, as in this case, they have presided over several other hearings with the same parties and have a longitudinal understanding of the case . . . . Even if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.

*In re R.J.T.*, 9 A.3d at 1190.

Instantly, there is some support for the trial court's conclusion that Appellant was attempting to manipulate the judicial system and delay the prosecution. Appellant did not request counsel until he reviewed the sentencing recommendation of the probation department and immediately before the scheduled sentencing hearing. *Cf. Carrasquillo*, 115 A.3d at 1292 (noting that timing of a claim of innocence is a factor in assessing the fair and just basis for the requested withdrawal of a plea). Moreover, Appellant conceded that his requests for counsel and withdrawal of his plea were due, in part, to the sentencing recommendation set forth by the probation department. Although Appellant attempts to raise plausible bases for his claim of innocence based on (1) additional evidence, (2) the allegations against him, and (3) his assertion of Co-defendant's undue influence over him, an appellate court will generally defer to the trial court's weighing of the evidence.[10] *See In re R.J.T.*, 9 A.3d at 1190.

However, this case raises considerations beyond the proper weighing and deference to a mere claim of innocence, namely, Appellant's right to effective counsel and his waiver of his right to counsel.

> Both the right to counsel and the right to self-representation are guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section Nine of the Pennsylvania Constitution. Deprivation of

---

[10] We note that the trial court refused to consider Appellant's assertion of innocence or review the allegations against him. In light of *Carrasquillo*, it appears that a court may do so, at least when rejecting a claim of innocence.

these rights can never be harmless. The constitutional right to counsel may be waived, but this waiver is valid only if made with knowledge and intelligence.

In order to make a knowing and intelligent waiver, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it. Moreover,

the presumption must always be against the waiver of a constitutional right. Nor can waiver be presumed where the record is silent. The record must show, or there must be an allegation and evidence which shows, that an accused was offered counsel but intelligently and understandingly rejected the offer.

Thus, for this Court "to uphold such a waiver, the record must clearly demonstrate an informed relinquishment of a known right."

*Commonwealth v. Houtz*, 856 A.2d 119, 122 (Pa. Super. 2004) (quotation marks and citations omitted); *see also Commonwealth v. Payson*, 723 A.2d 695 (Pa. Super. 1999). The acceptance of a plea from an unrepresented party should be approached with special care, and we are mindful that Appellant asserted his inability to pay for counsel prior to waiving his right to counsel and pleading no contest.

Appellant, however, does not challenge the trial court's colloquy regarding his waiver of counsel or the voluntary, knowing, and intelligent nature of his waiver of counsel. Moreover, he does not question the colloquy regarding his decision to plead guilty. Rather, he contends the trial court denied him the right to effective counsel because the court did not consider his counseled motion to withdraw his plea.

This claim is meritless. The trial court clearly considered the motion to withdraw and denied it on its merits. Although Appellant may have been entitled to relief based on his assertion of innocence before the *Carrasquillo* decision, *Carrasquillo* made clear that the trial court retains the discretion to consider whether Appellant's assertion of innocence is a fair and just reason to withdraw his plea given the policy that presentence requests should be liberally granted. Thus, we conclude that Appellant has not demonstrated an abuse of discretion or error of law by the trial court when it denied his presentence motion to withdraw his plea.

Judgment of sentence affirmed.[11]

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2016

---

[11] The Commonwealth's third motion for extension of time to file its brief is denied.

- 24 -