J-S32045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                         :                   PENNSYLVANIA
                         :

           v.                    :

                         :

MARIO CASANOVA-LANZO        :
                         :

          Appellant       :     No. 12 MDA 2022

Appeal from the PCRA Order Entered December 13, 2021
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001530-2013

BEFORE: PANELLA, P.J., BENDER, P.J.E., and LAZARUS, J.

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 13, 2022**

Mario Casanova-Lanzo appeals, *pro se*, from the order, entered in the Court of Common Pleas of Lancaster County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Upon review, we affirm.

The trial court provided the following factual summary:

On the night of February 20, 2013, [Casanova-Lanzo] broke into the residence of his estranged wife, Hollie Casanova, and shot and killed Parrish Thaxton[, Ms. Casanova's paramour]. [Casanova-Lanzo] had not resided in the residence since October 2012[,] when he and Ms. Casanova separated. Ms. Casanova resided there with her six (6) children and [Thaxton]. [Casanova-Lanzo] gained entrance to the locked residence by breaking a window in the kitchen. [Casanova-Lanzo] then proceeded upstairs where his and Ms. Casanova's young son, M.S., witnessed [Casanova-Lanzo] enter the bedroom of Ms. Casanova and [Thaxton]. Upon entering, [Casanova-Lanzo] fatally shot [Thaxton], who was lying in bed, once in the chest and once in the face with a sawed-off shotgun while yelling at [Thaxton] to get out. [Casanova-Lanzo] then left the residence.

[Casanova-Lanzo] turned himself into the authorities the next day. A mail intercept during [Casanova-Lanzo]'s incarceration produced a letter [Casanova-Lanzo] wrote to his sister on or about April 29, 2013. In the letter, [Casanova-Lanzo] admits that he went to Ms. Casanova's residence on that night with the intent to murder [Thaxton].

Trial Court Opinion, 1/2/19, at 2-3.

On September 20, 2018, a jury convicted Casanova-Lanzo of first-degree murder and burglary. Casanova-Lanzo was subsequently sentenced to an aggregate term of life in prison without parole, plus 3½ to 10 years' imprisonment. Casanova-Lanzo filed a timely notice of appeal and this Court affirmed his judgment of sentence. *See Commonwealth v. Casanova-Lanzo*, 217 A.3d 368 (Pa. Super. 2019) (Table). Casanova-Lanzo filed a petition for allowance of appeal, which our Supreme Court denied on September 4, 2019. *See Commonwealth v. Casanova-Lanzo*, 217 A.3d 800 (Pa. 2019) (Table).

On November 24, 2019, Casanova-Lanzo, acting *pro se*, filed the instant PCRA petition. The PCRA court appointed counsel who, on January 30, 2020, filed an application to withdraw based upon Casanova-Lanzo's desire to proceed *pro se*. The PCRA court conducted a *Grazier*[1] hearing, after which it granted counsel's application to withdraw and permitted Casanova-Lanzo to proceed *pro se*. On January 12, 2021, Casanova-Lanzo, *pro se*, filed an amended PCRA petition. On July 22, 2021, the PCRA court conducted an evidentiary hearing, after which it ordered additional briefing from the parties.

---

[1] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

After the parties filed their respective briefs, the PCRA court denied Casanova-Lanzo's PCRA petition on December 13, 2021.

Casanova-Lanzo, *pro se*, filed a timely notice of appeal and a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[2] Casanova-Lanzo now presents the following claim for our review: "The P[]C[]R[]A[] [c]ourt was in error for its denial of [Casanova-Lanzo]'s P[]C[]R[]A[] due to the multiple ineffective assistance of [c]ounsel[] claims raised and proven by [Casanova-Lanzo]." Brief for Appellant, at 4.

We begin by noting that Casanova-Lanzo actually raises approximately nine separate claims, some with several sub-issues, in the argument section of his brief, which we address separately.[3] Additionally, all of Casanova-

_____

[2] During the pendency of this appeal, Casanova-Lanzo filed a Petition for Discovery with this Court, in which he requested all transcripts for the instant case from the Lancaster County Public Defender's Office. **See** Petition for Discovery, 1/13/22, at 1-2. On February 9, 2022, this Court remanded the record to the trial court to determine which transcripts and documents are necessary for Casanova-Lanzo's appeal. **See** Order, 2/9/22, at 1. The trial court has certified that all transcripts and relevant materials had previously been provided to Casanova-Lanzo pursuant to the trial court's November 18, 2020, order. **See** PCRA Court's Response, 3/7/22, at 1-9 (detailing history of PCRA discovery, as well as transcripts and exhibits received by Casanova-Lanzo used in preparation of his PCRA petition and subsequent hearing).

[3] We observe that Casanova-Lanzo's brief is replete with violations of Pa.R.A.P. 2116(a). **See** Pa.R.A.P. 2116(a) ("The statement of questions involved must state concisely the issues to be resolved . . . [and] will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is **stated in the statement of questions involved or is fairly suggested thereby**.") (emphasis added). Because Casanova-Lanzo's statement of questions involved raises a single issue, while his argument section raises nine issues with multiple sub-issues, we could find all
*(Footnote Continued Next Page)*

Lanzo's claims raise challenges to his trial counsel's effectiveness. We adhere

to the following standard of review:

> We review an order [denying] a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations

omitted).

Regarding claims of ineffective assistance of counsel, counsel is

presumed to be effective, and "the burden of demonstrating ineffectiveness

rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279

(Pa. Super. 2010).

> To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[:] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his [client's] interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

---

of Casanova-Lanzo's claims waived on this basis. However, the PCRA court
has addressed at least some of these claims, and we endeavor to do the same.
Nevertheless, some of Casanova-Lanzo's claims are waived on this and other
bases, as detailed *infra*.

***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

In his first claim, Casanova-Lanzo contends that his trial counsel rendered ineffective assistance of counsel by failing to prepare and present a defense of insanity at trial. Brief for Appellant, at 7-10. Casanova-Lanzo asserts that he was incompetent for several years prior to trial, and his trial counsel should have presented an insanity defense. ***Id.***

Casanova-Lanzo has failed to include this claim in his Rule 1925(b) statement and, therefore, it is waived. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (issues not included in Rule 1925(b) statement are waived on appeal). Additionally, this claim is not fairly suggested by his statement of questions involved. ***See*** Pa.R.A.P. 2116(a).

In his second claim, Casanova-Lanzo argues that the trial court erred by not permitting him to proceed *pro se* at the time of trial. Brief for Appellant, at 11. Casanova-Lanzo contends that the trial court forced him to accept court-appointed counsel against his wishes. ***Id.*** Casanova-Lanzo further asserts that the trial court erred in accepting expert testimony regarding his competency, and that his trial counsel was incompetent in failing to challenge the trial court's ruling. ***Id.*** at 11-15. Casanova-Lanzo argues that he filed a motion to proceed *pro se* in May of 2014. ***Id.*** at 13. Additionally, he asserts that he filed various motions between May 2014 and May 2015 requesting, *inter alia*, to proceed *pro se*. ***Id.*** at 14-15.

Preliminarily, we observe that Casanova-Lanzo raises, for the first time on appeal, his claim that the trial court erred in denying his requests to proceed *pro se* at trial. **See** Pa.R.A.P. 302(a) (issues not raised before trial court are waived on appeal). Based upon our review, this claim does not appear in any of Casanova-Lanzo's underlying PCRA petitions. Rather, this claim appears for the first time in his Rule 1925(b) statement and again his in his appellate brief. **See Commonwealth v. Williams**, 900 A.2d 906, 909 (Pa. Super. 2006) ("including an issue in a [Rule 1925(b) statement] does not revive [it]"). Moreover, as noted **supra**, Casanova-Lanzo has failed to comply with Rule 2116(a). **See** Pa.R.A.P. 2116(a). We conclude that this claim is waived for our review.

Casanova-Lanzo next asserts that trial counsel was ineffective by failing to object to the trial court's ruling on his request to proceed *pro se*. Because his underlying motion to proceed *pro se* was meritless, we conclude that trial counsel cannot be deemed ineffective for failing to object to the court's ruling.

We review a trial court's ruling on a defendant's request to proceed *pro se* for an abuse of discretion. **See Commonwealth v. El**, 977 A.2d 1158, 1167 (Pa. 2009) ("A request to take on one's own legal representation after meaningful proceedings have begun does not trigger the automatic constitutional right to proceed *pro se*. The decision instead is left to the sound discretion of the trial court."). "The constitutional right to counsel may be waived, but this waiver is valid only if made with **knowledge and**

intelligence." ***Commonwealth v. Phillips***, 93 A.3d 847, 851 (Pa. Super. 2014) (emphasis added, citation omitted). "In order to make a **knowing and intelligent waiver**, the individual must be aware of both the nature of the right and the risks and consequences of forfeiting it." ***Commonwealth v. Payson***, 723 A.2d 695, 700 (Pa. Super. 1999) (emphasis added, citation omitted).

Instantly, as the PCRA court stated in its opinion, Casanova-Lanzo was deemed to be incompetent between May 2014 and January 2018. ***See*** PCRA Court Opinion, 12/13/21, at 22. Thus, during that time, Casanova-Lanzo would not have been able to knowingly and intelligently waive his right to counsel. ***See Phillips***, ***supra***; ***Payson***, ***supra***; ***see also Commonwealth v. Blakeney***, 108 A.3d 739, 759 (Pa. 2014) (where defendant is mentally incompetent, trial court may deny request to waive counsel and proceed *pro se* "on the ground that to do otherwise would compromise the defendant's right to a fair trial"). Moreover, Casanova-Lanzo did not make any requests to proceed *pro se* after he was deemed competent to stand trial. Therefore, there is no arguable merit to this claim, and Casanova-Lanzo is not entitled to relief. ***See Holt***, ***supra***.

In his third claim, Casanova-Lanzo raises two sub-issues. First, he contends that his Sixth, Eighth, and Fourteenth Amendment rights were violated when his counsel did not raise his mental status at sentencing. Brief

for Appellant, at 16. Second, he claims that the trial court erred by failing to account for his mental status at sentencing. *Id.* at 16-17.

These claims, much like his first claim, do not appear anywhere in Casanova-Lanzo's Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4(vii). Moreover, like the claims above, they are not fairly suggested by his statement of questions involved. *See* Pa.R.A.P. 2116(a). Thus, these claims are waived.

In his fourth claim, Casanova-Lanzo claims that his trial counsel rendered ineffective assistance by failing to file a Pa.R.Crim.P. 600 motion. Brief for Appellant, at 26-27. He argues that the trial court and his trial counsel worked together to find him incompetent in order to prevent him from representing himself and, as a result, it took him over 2,000 days to proceed to trial. *Id.* at 22-27. Casanova-Lanzo contends that this delay was in violation of his constitutional right to a speedy trial and Rule 600. *Id.* at 22-29.

Pennsylvania Rule of Criminal Procedure 600 provides, in relevant part, as follows:

> **(A) Commencement of Trial; Time for Trial**
>
> \* \* \*
>
> (2) Trial shall commence within the following time periods.
>
>> (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(2)(a).  "Rule 600 generally requires the Commonwealth to bring a defendant . . . to trial within 365 days of the date the complaint was filed."  ***Commonwealth v. Hunt***, 858 A.2d 1234, 1240 (Pa. Super. 2004).  To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief.  ***Id.*** at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600."  ***Commonwealth v. McNear***, 852 A.2d 401, 406 (Pa. Super. 2004).

> It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed.  The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant.  Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

***Id.***  In the context of Rule 600, "excludable time" is differentiated from "excusable delay" as follows:

> "Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from:  (a) the unavailability of the defendant or the defendant's attorney; [or] (b) any continuance granted at the request of the defendant or the defendant's attorney.  "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes in[to] account delays [that] occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

***Hunt***, 858 A.2d at 1241 (internal citations and footnote omitted).

In determining whether any time constitutes excludable delay under Rule 600, a trial court must determine whether the time is a "delay in proceedings," and whether the delay should be excluded based on an analysis of the Commonwealth's due diligence. **Commonwealth v. Mills**, 162 A.3d 323, 325 (Pa. 2017). If time is a "delay," it is excludable when it falls under the "wide variety of circumstances [encompassed by Rule 600] under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence." **Commonwealth v. Armstrong**, 74 A.3d 228, 236 (Pa. Super. 2013) (citations and quotation marks omitted). Time that is "necessary to ordinary trial preparation" or "attributable to the normal progression of a case simply is not a 'delay' for the purposes of Rule 600." **Id.**

"A Rule 600 motion requires a showing of due diligence by a preponderance of the evidence for the Commonwealth to avail itself of an exclusion." **Commonwealth v. Selenski**, 994 A.2d 1083, 1089 (Pa. 2010) (citation omitted). "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." **Id.** Reasonable effort includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that the defendant was brought to trial within the time prescribed by Rule 600. **See Commonwealth v. Aaron**, 804

A.2d 39, 43-44 (Pa. Super. 2002); **Commonwealth v. Hill**, 736 A.2d 578,

592 (Pa. 1999).

Instantly, the PCRA court addressed this claim as follows:

In this case, the record indicates that nearly all delays of trial were based upon the incompetence of [Casanova-Lanzo] to stand trial and not because the Commonwealth failed to exercise due diligence. The complaint was filed on February 21, 2013. On August 23, 2013, this [c]ourt scheduled a trial date for May 2014 to provide all the attorneys adequate time to prepare for a death penalty case[.]

At a suppression hearing on May 7, 2014[]—a week before the scheduled trial—there were significant concerns about [Casanova-Lanzo]'s competence to stand trial. Therefore,[ at defense request,] the [c]ourt continued the trial until May 2015. This time was [] attributable to the [d]efense. Rather than beginning a trial in May 2015, a competency hearing was held that day. At the hearing, defense psychiatrist expert, Dr. Gottlieb, testified that he evaluated [Casanova-Lanzo] on February 10, 2014, May 1, 2014, and April 8, 2015. At each meeting, Dr. Gottlieb found that [Casanova-Lanzo] was incompetent to stand trial. The [c]ourt accept[ed] the reports of [Dr. Gottlieb], and [Casanova-Lanzo] was scheduled to be reevaluated by Dr. Gottlieb every 60 days per the law. In September 2016, January 2017, January 2018, Dr. Gottlieb still found [Casanova-Lanzo] incompetent to stand trial. The two years of continuance[s,] from September 2016 to January 2018, were[ also] attributable to the defense [due to Casanova-Lanzo's continued incompetence]. Finally, on September 17, 2018, trial [] commence[d].

A review of the record [reveals that] between the filing of the complaint [] and the commencement of trial, only six months [were] attributable to the Commonwealth. Therefore, no Rule 600 violation occurred in this case and trial counsel did not have any basis to present this issue to the [c]ourt, so he was not ineffective.

PCRA Court Opinion, 12/13/21, at 20-21.

Based upon our review, we agree with the sound reasoning of the PCRA

court. On August 23, 2013, in the order scheduling Casanova-Lanzo's trial,

the trial court specifically stated "[d]ue to the need for extended preparation by the defense regarding the death penalty, all time up to and including May, 2014, shall be attributed to the defense regarding Rule 600." **See** Order, 8/23/13, at 1 ¶ 4. Thus, the time attributable, at best, to the Commonwealth was from February 23, 2013 to August 23, 2013, a total of 183 days. Subsequently, from approximately May of 2014, until approximately January of 2018, Dr. Gottlieb continued to find Casanova-Lanzo incompetent to stand trial and the trial court accepted Dr. Gottlieb's reports and deemed Casanova-Lanzo incompetent to stand trial. **See** PCRA Court Opinion, 12/13/21, at 20-21.[4] Additionally, on January 22, 2018, the trial court issued another order, in which it directed Casanova-Lanzo be committed to Norristown State Hospital due to his incompetence to stand trial. **See** Order, 1/22/18, at 1. In that same order, the trial court again accepts Dr. Gottlieb's report finding that Casanova-Lanzo is incompetent. **Id.** Importantly, Casanova-Lanzo remained involuntarily committed due to his incompetence until August 16, 2018, when the trial court issued an order directing that Casanova-Lanzo be transported to the Lancaster County Prison for trial. **See** Order, 8/16/18, at 1. Subsequently, trial commenced on September 17, 2018, or 32 days later. Therefore, subtracting the significant amount of time that Casanova-Lanzo was incompetent to stand trial, this Court is left with merely 215 days that

_____

[4] We note there are several trial court orders reflecting these findings, but due to the sheer numbers we do not cite to them in this memorandum.

**might** be attributable to the Commonwealth for Rule 600 purposes. We need not delve into each party's share of responsibility for the 215 day delay, because it falls far short of the 365 days allowed under Rule 600. **See** Pa.R.Crim.P. 600(a)(2); **Hunt**, **supra**. Accordingly, we conclude that trial counsel was not ineffective for failing to raise this claim, and Casanova-Lanzo is entitled to no relief. **See Holt**, **supra**.

In his fifth claim, Casanova-Lanzo argues that his trial counsel rendered ineffective assistance of counsel by failing to file a motion to exclude from trial prison letters between Casanova-Lanzo and his family. Brief for Appellant, at 31-33. He also asserts that the Commonwealth violated **Brady**[5] because the Commonwealth never provided the letters to Casanova-Lanzo or his counsel.[6] **Id.** He further contends that the Commonwealth acted inappropriately by using the letters to coerce him into various guilty pleas. **Id.**

The PCRA court addressed these claims as follows:

In this case, [Casanova-Lanzo] wrote two letters during his incarceration in Lancaster County Prison that detailed the facts of [the] murder and the reasons for his actions. The letters were signed by him and given to correctional officers to be sent to his family. Since the letters were drafted in jail and sent to his family[,] not his attorney, they were not privileged and [Casanova-Lanzo] did not have a reasonable expectation of

---

[5] **Brady v. Maryland**, 373 U.S. 83 (1963).

[6] We note that all of these claims could be considered waived due to Casanova-Lanzo's failure to comply with Pa.R.A.P. 2116(a). Indeed, his statement of questions does not fairly suggest a **Brady** violation or prosecutorial misconduct. Nevertheless, the PCRA court succinctly addressed all of these claims, and we affirm on that basis, *infra*.

- 13 -

privacy [in] them. Therefore, [Casanova-Lanzo's] trial counsel would not have been successful in suppressing them and he was not ineffective. In fact, trial counsel instructed [Casanova-Lanzo] [not] to [] discuss the case with anyone, but [Casanova-Lanzo] did not follow his direction. [Casanova-Lanzo] was the source of his own incriminating evidence, even after being arrested for the murder.

The allegation that the Commonwealth violated [Pa.R.Crim.P.] 573 [] in presenting the letters is patently false. [Casanova-Lanzo] claims that the letters were not provided to him or his counsel before trial, but that statement directly contradicts [his] other PCRA claims. He alleges that his [c]ounsel [and the Commonwealth] inappropriately used the letters to get him to plead guilty before trial. [However, i]t is clear that the Commonwealth provided trial counsel with the letters if [Casanova-Lanzo] remembers them and claims they were improperly used against him [by his own attorney].

PCRA Court Opinion, 12/13/21, at 10-12.

We affirm on the basis of the PCRA court opinion with respect to these claims. *See id.*; *see also Holt*, *supra*. Therefore, Casanova-Lanzo is not entitled to relief.

In his sixth claim, Casanova-Lanzo argues that his trial counsel rendered ineffective assistance of counsel by failing to cross-examine the Commonwealth's expert DNA witness. Brief for Appellant, at 34-39. In particular, Casanova-Lanzo contends that his trial counsel should not have stipulated to the expert testimony regarding Thaxton's blood on Casanova-Lanzo's pants. *Id.* Rather, he asserts, that trial counsel should have

challenged how the blood got there,[7] and challenged whether the expert reports were accurate. *Id.*

This claim, like Casanova-Lanzo's first and third claims, does not appear in his Rule 1925(b) concise statement. *See* Pa.R.A.P. 1925(b)(4)(vii). Moreover, like the claims above, it is not fairly suggested by his statement of questions involved. *See* Pa.R.A.P. 2116(a). Thus, it is waived.[8]

In his seventh claim, Casanova-Lanzo raises two sub-issues. In his first sub-issue, Casanova-Lanzo claims that both his rights, and the rights of his son, M.S., a minor child who testified, were violated by the trial court when the trial court allowed M.S. to testify outside of the court room. Brief for Appellant, at 40. In particular, Casanova-Lanzo contends that a family

---

[7] Casanova-Lanzo now asserts that Thaxton's blood was on his jeans from a prior fight in December 2012. He contends that trial counsel knew of the fight, and that Casanova-Lanzo did not wash those pants because he did not know the blood was there. *Id.*

[8] Even if Casanova-Lanzo had not waived this claim, we would afford him no relief. The PCRA court, in its opinion, aptly summarized trial counsel's testimony at the PCRA hearing and concluded he had a reasonable basis for stipulating to the expert reports. *See* PCRA Court Opinion, 12/13/21, at 12-13 (PCRA court summarizing trial counsel testimony challenging expert testimony regarding bloody jeans was inconsistent with heat of passion theory of defense, because it strayed away from heat of passion and instead towards innocence defense, which Casanova-Lanzo did not wish to pursue). Accordingly, it is clear that trial counsel had a reasonable basis for stipulating to the expert reports. *See Holt*, *supra*. Moreover, the PCRA court, in its opinion, addressed additional bases for denying this claim, which that include the impropriety of Casanova-Lanzo's desired line of questioning as to how the blood got onto his pants. PCRA Court Opinion, 12/13/21, at 12-13. Thus, Casanova-Lanzo would not be entitled to relief on this claim.

member should have been present with M.S. during his video testimony. *Id.* at 40-41. In his second sub-issue, Casanova-Lanzo asserts that trial counsel was ineffective by failing to raise these claims. *Id.*

Based upon our review, neither of these claims appear in Casanova-Lanzo's Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b)(4)(vii). Rather, Casanova-Lanzo's Rule 1925(b) statement merely states that the minor's testimony was illegal and inflammatory. *See* Rule 1925(b) Statement, 1/12/22, at 2. Additionally, these claims, like Casanova-Lanzo's first, third, and sixth claims, are not fairly suggested by his statement of questions involved. *See* Pa.R.A.P. 2116(a). Moreover, we observe that Casanova-Lanzo's brief and underlying PCRA petitions are completely devoid of any citation to case or statutory authority that would support his proposition that a family member must be present when a minor child gives testimony. *See* Pa.R.A.P. 2119(a) (requiring "discussion and citation of authorities as are deemed pertinent"). Therefore, these claims are waived.[9]

---

[9] Even if Casanova-Lanzo had not waived these claims, we would afford him no relief. We observe that the PCRA court adeptly explained its rationale for denying Casanova-Lanzo's claim, and concluded that trial counsel could not be ineffective by failing to raise a claim that lacked arguable merit. *See* PCRA Court Opinion, 12/13/21, at 16-19 (trial court's reasons for conducting Tender Years Hearing, conclusions and determinations regarding M.S.'s ability to testify, and procedure it followed); *see also Holt*, *supra*. Thus, even if Casanova-Lanzo had not waived this claim, we would conclude that the PCRA court did not abuse its discretion in denying relief.

In his eighth claim, Casanova-Lanzo claims that the trial court was biased and prejudiced against him during the suppression hearing. Brief for Appellant, at 42-43. Casanova-Lanzo argues that the trial court threatened him during the suppression hearing and demonstrated partiality throughout the entirety of the case. *Id.*

A claim of judicial bias falls under a violation of due process. *Commonwealth v. McLaughlin*, 240 A.3d 980, 983 (Pa. Super. 2020). An allegation challenging the impartiality of a judge, "is an attack upon the truth-determining process, a process that logically includes collateral attacks on the judgment of sentence." *Commonwealth v. Koehler*, 229 A.3d 915, 931 (Pa. 2020) (citing *Commonwealth v. Burkett*, 5 A.3d 1260, 1275 (Pa. Super. 2010) ("The PCRA process, although not directly related to an adjudication of guilt, is part of the truth-determining process.")). Generally, a party alleging judicial bias bears the burden of producing evidence to establish bias, prejudice, or unfairness, "which raises a substantial doubt as to the jurist's ability to preside impartially." *Commonwealth v. Watkins*, 108 A.3d 692, 734 (Pa. 2014).

"[S]imply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant." *Commonwealth v. Travaglia*, 661 A.2d 352, 367 (Pa. 1995). "Along those same lines, a judge's remark made during a hearing in exasperation at a party may be characterized as intemperate, but that remark alone does not establish bias

or partiality." **Commonwealth v. McCauley**, 199 A.3d 947, 951 (Pa. Super.

2018) (citation omitted). "In contrast, it is appropriate for a judge to recuse[,

for example,] when the judge has publicly on numerous occasions expressed

views about sentencing a class of defendants, [thus] ignoring the trial court's

obligation to impose individual sentences on defendants." **Id.** (citation

omitted). "Similarly, we may consider the cumulative effect of a judge's

remarks and conduct in multiple cases, even if no single act creates an

appearance of bias or impropriety." **Commonwealth v. Rhodes**, 990 A.2d

732, 748-49 (Pa. Super. 2009) (citation omitted).

The PCRA court addressed this claim as follows:

Here, [Casanova-Lanzo] has failed to prove that the [court] could
not preside over the case impartially. Prior to the date of the
alleged threats by the [c]ourt, the [c]ourt granted [Casanova-
Lanzo]'s motion to suppress incriminating statements. The
[c]ourt also accepted [Casanova-Lanzo]'s expert's findings that
[he] was incompetent to stand trial. These holdings were to the
benefit of [Casanova-Lanzo] and show the [c]ourt was acting
impartially [during the proceedings and] throughout the trial.

Finally, the ["]threats["] made at the [s]uppression [h]earing
were based upon [Casanova-Lanzo's] inappropriate behavior[.]
The hearing had been designated for review [of] all the evidentiary
issues that would be relevant for trial and to determine the
admissibility of said evidence. During this hearing, [Casanova-
Lanzo] continued to pursue his Rule 600 claims that had been
deemed meritless by the [c]ourt[.] Despite admonishing
[Casanova-Lanzo] that the Rule 600 issue was not a part of the
hearing's purpose, [Casanova-Lanzo] ignored the [c]ourt and
persisted in his arguments. Due to [Casanova-Lanzo's]
misbehavior, the [c]ourt threatened to have him removed from
the hearing so it could continue. No part of this hearing or the
[c]ourt's reaction showed bias against [Casanova-Lanzo]. At
[worst], it showed that the [c]ourt was fed up with [Casanova-

- 18 -

Lanzo's] inability to follow [c]ourt instruction[, w]hich would continue throughout trial and on direct appeal.

PCRA Court Opinion, 12/13/21, at 23-24.

Our review of the record confirms the PCRA court's determinations. Indeed, the record is replete with moments of Casanova-Lanzo disrupting court proceedings and refusing to abide by the trial court's warnings, thus, the trial court's responses are more akin to "intemperate" remarks regarding Casanova-Lanzo's behavior. ***See McCauley***, ***supra***. Therefore, this claim lacks merit and we conclude that the trial court was not acting with bias.

In his ninth claim, Casanova-Lanzo argues that his trial counsel rendered ineffective assistance by failing to do any investigation, failing to obtain expert witnesses, failing to have a trial strategy, and failing to present any defense at all. Brief for Appellant, at 44-48.

Preliminarily, we observe that Casanova-Lanzo has waived this claim. ***See*** Pa.R.A.P. 302(a); Pa.R.A.P. 1925(b)(4)(vii). Indeed, other than broad averments of trial counsel's ineffectiveness, Casanova-Lanzo has failed to preserve this in his Rule 1925(b) statement, his Rule 2116(a) statement of questions involved, and in his underlying PCRA petitions. ***See*** Pa.R.A.P. 2116(a).

Nevertheless, the PCRA court addressed this issue in its opinion as follows:

> [Casanova-Lanzo] claims his counsel was ineffective for failing to create a trial strategy. . . . [Casanova-Lanzo] claims that [trial counsel] should not have argued that [Casanova-Lanzo] was

"innocent of first-degree murder," rather, he should have argued that [Casanova-Lanzo] was only guilty of third-degree murder. The record clearly shows that [Casanova-Lanzo] is incorrect, his counsel did argue exactly that. During opening[,] [trial counsel] told the jury to keep an open mind while hearing the Commonwealth's evidence because they would not hear enough evidence to show premeditation. During closing, [trial counsel] argued that [Casanova-Lanzo] should not be found guilty of first-degree murder because it was a heat of passion killing. [Casanova-Lanzo] believed that [Thaxton] was abusing [Casanova-Lanzo's] children and admitted to that anger in his prison letters. He also argued that [Casanova-Lanzo]'s intent did not rise to the level of first-degree murder because he believed he would be getting back together with . . . his estranged wife. Therefore, it [i]s clear [that] trial counsel did attempt to establish the third-degree murder claim[,] so he cannot be ineffective for failing to argue it.

[Casanova-Lanzo] also claims that his trial counsel was ineffective because he spent more time trying to persuade him to plead guilty than work on a trial approach. [Trial counsel] testified at the PCRA hearing that it was impossible to work with [Casanova-Lanzo] on any trial strategy. This testimony is credible to the [c]ourt. According to [trial counsel], [Casanova-Lanzo] refused to admit any culpability even though there was a mountain of evidence against him. [Trial counsel also stated] that [Casanova-Lanzo] refused to discuss the case at all for several years while he was deemed to be incompetent. It was impossible to create a trial strategy when [Casanova-Lanzo] refused to communicate with his attorney or talk about the circumstances of the case. [Casanova-Lanzo] only wanted to pursue the third-degree [murder] trial strategy once trial was imminent. This provided [trial counsel] with very little time to create a plan that would rebut the mountain of evidence the Commonwealth had of the premeditated culpability of [Casanova-Lanzo]. It was even more difficult to support that strategy when [Casanova-Lanzo] would not testify at trial. . . . [Because Casanova-Lanzo] was completely averse to assisting in his [own] case, he cannot now say that his [trial] counsel had a poor trial strategy.

PCRA Court Opinion, 12/13/21, at 14-16.

Based upon our review, we agree with the sound reasoning of the PCRA court and affirm on this basis with respect to this claim. ***See id.***; ***See Holt***, ***supra***. Therefore, Casanova-Lanzo is not entitled to relief.

Based upon the foregoing, we affirm the PCRA court's order denying Casanova-Lanzo's PCRA petition.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/13/2022